539 So.2d 1207 (1989)
LOUISIANA STATE BAR ASSOCIATION
v.
Ronald NABONNE.
No. 87-B-1733.
Supreme Court of Louisiana.
March 13, 1989.
Thomas O. Collins, Jr., Cheri Ann Cotogno, New Orleans, Gerard F. Thomas, Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pé, Metairie, for applicant.
*1208 Ronald P. Nabonne, New Orleans, pro se.
Terry Q. Alarcon, for respondent.
LEMMON, Justice.
This is a disciplinary proceeding by the Louisiana State Bar Association, through its Committee on Professional Responsibility, against one of its members based on alleged violations of the Code of Professional Responsibility in his dealings with two separate clients.[1]
The Dewey Matter
On August 26, 1983, respondent handled an act of sale on behalf of Melissa Dewey. At the time of the closing the client's lender gave respondent $525.00 with instructions to pay the title examination and policy fee for title insurance that had been ordered by the lender. Respondent did not place these funds in a trust account and did not submit the $525.00 fee to the title insurer until January of 1984. The title policy issued to the lender shortly thereafter contained several exceptions because respondent had failed to complete all of the requirements established by the title insurer.[2]
The lender incurred $326.00 in fees for the preparation of an act of correction and an act of ratification necessary to remedy respondent's failings. Respondent did not reimburse the $326.00 to the lender until some time between the commissioner's hearing in December, 1987 and the oral argument before this court.
Based on the lender's complaint, the Bar Association charged respondent with violating Disciplinary Rules 1-102, 6-101(A)(3), and 9-102(A) by engaging in conduct which reflected on his fitness to practice law; by neglecting a legal matter entrusted to him; and by failing to deposit his client's funds in an identifiable bank account separate from his own funds.
The commissioner appointed by this court concluded that respondent did not violate DR 9-102(A), which requires that funds of the client be deposited into a separate bank account. The commissioner reasoned that the $525.00 given to respondent for the title insurance were not funds of the client, but rather were funds of the client's lender. He also noted that DR 9-102(A) provides an exception for "advances for costs and expenses", observing that these funds fell under that exception.[3] The commissioner also concluded that respondent's failure to pay the $525.00 to the title insurer until five months after the closing did not constitute neglect in violation of DR 6-101(A)(3), because there was no detriment to the client, but only to the client's lender. Finally, the commissioner concluded that any neglect on respondent's part, even if there was an obligation to the client's lender, did not amount to conduct that would call into question respondent's moral fitness to practice law so as to be a violation of DR 1-102. Emphasizing respondent's failure for more than four years to reimburse the client's lender the $326.00 paid to correct the errors and deficiencies in handling the act of sale, the commissioner recommended that respondent be given a reprimand.
As to DR 9-102(A), respondent's holding of the $525.00 due to the title insurer for five months constituted a misuse of the client's funds, although the funds had been given to respondent by the lender. These funds were part of the proceeds of the mortgage loan for which the client was *1209 liable and were given to respondent as the client's attorney for the purpose of paying the client's debt to the title insurer. The client remained liable on this debt for five months until respondent finally turned the funds over to the title insurer. Respondent clearly had the duty to his client either to transmit the funds to the title insurer immediately upon receipt at the closing or to place the funds in a separate bank account if it was necessary to delay the transmittal.[4]
As to DR 6-101(A)(3), the neglect in forwarding the funds to the title insurer clearly put the client in jeopardy, as discussed above. Moreover, respondent failed to complete the title insurer's requirements timely, and this neglect caused the lender to incur a $326.00 fee. Therefore, the Bar Association proved by clear and convincing evidence that respondent neglected a legal matter entrusted to him.
The Dupre Matter
Respondent was retained by Warren Dupre in June of 1980 to recover Dupre's damages sustained in an October, 1979 automobile accident. Respondent allowed the claim to prescribe and then led the client to believe he was actively pursuing the matter.
After the claim had prescribed, respondent showed the client a petition which purportedly had been filed on his behalf, apparently for the purpose of covering up his malpractice. Over a year later, respondent again misled the client by showing him a set of interrogatories supposedly sent to respondent by the purported defendant in the non-existent action.
The client eventually contacted another attorney who determined that suit had never been filed. The client then brought a malpractice action against respondent.
Respondent ultimately agreed to a consent judgment, which was entered on November 6, 1984 for $21,415.59. Respondent, however, did not satisfy this judgment until after the commissioner's hearing almost four years later.
The Bar Association charged respondent with violating Disciplinary Rules 6-101(A)(3) and 1-102(A)(4), (5) and (6) by neglecting a legal matter entrusted to him and by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, which conduct was prejudicial to the administration of justice and adversely reflected upon his fitness to practice law. The Association also alleged that respondent did not cooperate in the Association's investigation, having failed to submit a formal reply to the Association's complaint despite numerous letters, demands and assurances of compliance.
The commissioner found clear and convincing evidence that respondent neglected a legal matter entrusted to him and then engaged in conduct involving deceit in order to conceal the neglect. Noting that an isolated incident of allowing a claim to prescribe can happen to any conscientious and morally fit attorney and that malpractice actions are available to correct these mistakes, the commissioner opined that respondent frustrated the remedy provided by the judicial system first by deceiving the client and then by failing to pay any amount on the consent judgment for four years, although respondent was gainfully employed during this time. The commissioner recommended a suspension of one year for this misconduct.[5]
*1210 Respondent clearly neglected a legal matter entrusted to him in violation of DR 6-101(A)(3). This conduct, however, apparently was mere negligence which was properly addressed in a civil action. More significant was his conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102(A)(4). After allowing his client's suit to prescribe, respondent deceived his client into thinking that a suit was pending by showing the client sham pleadings which were confected solely for the purpose of promoting the deception. Although the client was ultimately made whole through a consent judgment in the malpractice action, respondent failed without apparent justification to make any effort to satisfy this obligation for almost four years after the date of judgment.
The above conduct on respondent's part was also prejudicial to the administration of justice and adversely reflected upon his fitness to practice law in violation of DR 1-102(A)(5) and (6).
Penalty
Respondent was guilty of neglect of legal matters entrusted to him in two separate matters over two years apart. In the Dupre matter he negligently allowed a client's claim to prescribe and then covered up his neglect for more than a year by deceiving his client with phony pleadings. He finally confessed judgment in a civil action, but did not make any payments on the judgment until four years later, when he paid in full.
In the Dewey matter respondent was given a client's funds for immediate transmittal in payment for title insurance, but held the funds for five months without justification and without placing the funds in a trust account.[6] His neglect in failing to fulfill the requirements by the title insurer and his inattention to detail caused the lender to incur expenses of $326.00 in order to remedy the deficiencies, and he did not reimburse the lender until four years later.
The most serious misconduct was respondent's deceiving the client by covering up his neglect. Candor is the foundation of any attorney-client relationship, and deceit of a client cannot be tolerated.
Absent aggravating and mitigating circumstances, suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client, Standards for Imposing Lawyer Sanctions § 4.12 (1986); when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, Standards, supra § 4.42(a); and when a lawyer knowingly deceives a client and causes injury or potential injury to the client, Standards, supra § 4.62.
There are a number of mitigating circumstances. Standards, supra § 9.32. Respondent began practicing law in 1972, and there have been no other complaints against him in sixteen years of practice. Neither of the isolated incidents of misconduct involved personal gain or benefit for respondent. Although the two instances of neglect caused a potential for injury, the losses in both cases were finally made good by respondent, although he did not do so until after disciplinary proceedings had been filed. There was substantial testimony by civic leaders and other clients that respondent was extremely competent as an attorney and that the lapse in performance concerning these two clients was totally uncharacteristic. Furthermore, there was evidence of respondent's personal and emotional problems caused by the death of his mother prior to his misconduct and the subsequent responsibility placed on him to care for his adolescent sister, who was herself experiencing emotional and behavioral problems. These emotional circumstances were compounded by the dissolution of respondent's law firm around the time of his misconduct. Finally, respondent has shown remorse for these offenses.
*1211 The only aggravating factors were respondent's indifference to making restitution and his failure to comply with the requests of the Bar Association concerning the investigation of the complaints. Standards, supra § 9.22.
Considering the above factors, we conclude that respondent should be suspended from the practice of law for one year. See Louisiana State Bar Association v. Bubert, 421 So.2d 831 (La.1982).[7]
Decree
For these reasons, it is ordered that Ronald Nabonne be suspended from the practice of law in Louisiana for one year from the date of finality of this judgment. Respondent is to bear all costs of this proceeding.
NOTES
[1] The Code of Professional Responsibility was replaced by the Rules of Professional Conduct, effective January 1, 1987. The alleged violations in this case occurred before the effective date.
[2] The conveyance and mortgage certificates were not annexed to the recorded act, and there were errors in the property description and acquisition clause. Respondent also listed the incorrect amount of the principal and interest on the settlement statement at the time of the closing.
[3] DR 9-102(A) provides:

"All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except...." (emphasis added)
[4] The funds arguably were an advance for costs and expenses which fell within the exception in DR 9-102(A). Advances for costs or expenses need not be deposited in a separate account when the specific costs or expenses have already been incurred or are readily determinable in amount and will become due immediately, as opposed to advances for unspecified costs and expenses that may become due in the future and must be deposited in a separate account. Louisiana State Bar Association v. Williams, 512 So. 2d 404 (La.1987). Nevertheless, respondent's misconduct consisted of failing to pay immediately the debt already due or alternatively to deposit the funds in a trust account pending payment. Certainly he could not withhold payment of the debt already due and commingle the funds with his own.
[5] Alternatively, the commissioner recommended suspending respondent for two years from private practice, while allowing him a limited practice to continue serving as attorney for a local government agency.
[6] Respondent was not charged with converting the funds to his own use in violation of DR 9-102(B).
[7] In Bubert the attorney allowed a tort claim to prescribe. He did not advise the client of the situation and appeared to deceive him. He made restitution by a promissory note secured by a second mortgage on his home. The attorney's personal problems involved serious physical ailments, but on the other hand the prescribed claim involved a much more serious injury than the one in the present case. A one-year suspension was imposed.

In Louisiana State Bar Association v. Lyons, 491 So.2d 369 (La.1986), there were three cases of neglect, and the attorney deceived the clients in two of the cases. Further, unearned fees were not returned. The suspension was for two years.