# In re Thomas Pressly

[628 A.2d 927]

No. 92-135

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 4, 1993

*A. Jeffrey Taylor*, Rutland, for Appellant.

*Wendy S. Collins*, Special Bar Counsel, Montpelier, for Appellee.

**Per Curiam.** Respondent Thomas Pressly appeals from a decision of the Professional Conduct Board recommending a pub-

lic reprimand as discipline for his misconduct in violating Disciplinary Rule (DR) 4-101(B)(1) ("a lawyer shall not knowingly . . . [r]eveal a confidence or secret of his client"). DR 1-102(A)(1); A.O. 9, Rule 7A(4). We affirm and impose the recommended sanction.

In 1989, respondent, a member of the Vermont bar since 1975, represented complainant in connection with relief from abuse and divorce proceedings. Complainant informed respondent that her husband had a history of alcoholism, battering, and abuse. After a hearing at which she was represented by respondent, complainant was granted a temporary order requiring her husband to refrain from abusing her, and, by stipulation of the parties, temporary custody of the couple's two children with supervised visitation by the father. About a month later, respondent filed a divorce complaint on his client's behalf. The parties negotiated an agreement under which complainant would retain temporary custody of the children and her husband would be allowed unsupervised visitation. Complainant, on respondent's advice, reluctantly agreed to the visitation provision.

At that time, complainant told respondent that she was being harassed by her husband, that his alcoholism was a continuing problem, and that she wanted the children's visits with their father to be supervised. Respondent advised her, however, that there were insufficient legal grounds to require supervised visits. Complainant continued to press respondent to help her prevent her husband from continuing unsupervised visitation, but no motion was filed seeking supervised visitation.

Near the end of August 1989, complainant told respondent her suspicions, based on consultation with a counselor, that her nine-year-old daughter had been sexually abused by the father. According to the counselor, a "yellow flag" went up when she observed several symptoms of abuse. Complainant told respondent her suspicions, the basis for them, and her plan to arrange for a doctor's appointment for the daughter, which she thought might provide needed evidence against the father. She asked that respondent not discuss her suspicions or plans with her husband's lawyer.

In response to opposing counsel's question as to why the wife continued to request supervised visitation and whether sexual

abuse was an issue in the case, respondent, notwithstanding his client's request, revealed to him the suspicions of sexual abuse. Respondent then asked the husband's lawyer not to communicate this information to the husband.* The next day, opposing counsel wrote respondent stating, "I mentioned to [my client] the representation [your client] had made to you about their daughter making statements to her counselor about sexual abuse. . . . [They] are totally unfounded and he views them to be a blatant attempt on the part of [your client] to manufacture evidence to keep him away from his children."

Complainant confronted her attorney about the disclosure, and was told by respondent that he provided the information in response to questions from opposing counsel. She discharged respondent and retained new counsel. After the disclosure, complainant perceived that her husband became increasingly uncooperative, which heightened her sense of fear and anxiety and created emotional distress.

The report of the panel appointed to hear the wife's complaint was adopted verbatim by the Board, which agreed that respondent had violated Disciplinary Rule 4-101 of the Code of Professional Responsibility. In approving a public reprimand, the Board agreed that respondent, although he did not intend to harm his client, knew the disclosure he made was confidential.

Respondent raises numerous claims of error in the Board's determination and recommendation. He argues that the panel's findings that he acted "knowingly" and that complainant was injured by his conduct were not supported by the evidence; the Board's failure to find any additional mitigating factors was clearly erroneous; the sanction recommended was disproportionate when viewed in relation to other cases involving public reprimands; the Board's approval of the panel's findings, with-

---

* Complainant's testimony indicated that she directed her attorney not to disclose anything about sexual abuse to the husband. No mention was made of the opposing counsel. Although respondent points out this distinction as being contrary to the findings, we fail to understand its significance. The only ethical way respondent could communicate about the case was through the husband's lawyer. DR 7-104(A)(1) (lawyer not to communicate directly with adverse party). Respondent could not reasonably expect husband's counsel to keep the wife's confidences unrevealed. Respondent acknowledged that if he had been given similar information by opposing counsel, he would have disclosed it to his client, notwithstanding a request not to do so.

out issuing a separate written decision, violated Rule 8D of A.O. 9; and he was deprived of his due process rights because not all members of the Board received his brief prior to the issuance of the Board's decision. Respondent's basic claim is that the discipline does not fit the infraction and that under the circumstances only a private admonition is warranted.

■ Findings of the Professional Conduct Board "shall not be set aside unless clearly erroneous." A.O. 9, Rule 8E. This Court also gives deference to the Board's recommendations on sanctions. *In re Berk*, 157 Vt. 524, 528, 602 A.2d 946, 948 (1991) (citing A.O. 9).

In recommending public reprimand, the Board looked to the American Bar Association's Standards for Imposing Lawyer Sanctions (ABA Standards). The standards are a model for imposing sanctions on attorneys based on the ethical duty involved, the party to whom the duty is owed, the lawyer's motives and intentions, and the injury caused by the misconduct. Preface to ABA Standards. Section 4.2 of the ABA Standards provides guidance as to what sanctions are appropriate for failing to preserve a client's confidences. Absent aggravating or mitigating circumstances, Standard 4.22 generally recommends suspension when an attorney violates DR 4-101(B)(2) and the disclosure causes "injury or potential injury to a client." Standard 4.23 generally recommends a public reprimand when the lawyer negligently reveals a client confidence and "injury or potential injury to a client" results. Standard 4.24 recommends a private admonition when the lawyer negligently reveals a client confidence and "little or no actual or potential injury to a client" results.

The Board found that respondent acted knowingly, not negligently. The Board, however, looked to Standards 4.23 and 4.24 for guidance in determining what sanction was appropriate even though those standards refer to a lawyer acting "negligently." It believed a suspension would be "too draconian" under the facts of this case. The Board considered discipline to be a "close question" between a private or public reprimand. Respondent argues that his actions were in fact negligent and contends that the sanction should be reduced to a private admonition.

 Whatever mental state we ascribe to respondent's conduct, he should have known not to disclose his client's confidence. He testified before the panel that he knew the information was to be held in confidence, but felt that when pressured as to why his client wanted supervised visitation, informing opposing counsel was best. When asked whether he had thought of ending the conversation with counsel by stating that an attorney-client privilege precluded him from revealing anything further, he stated "If I say that, I think I'm letting the cat out of the bag also." He understood that he should not have revealed what his client had requested him to hold in confidence; therefore, his conduct satisfied the "knowingly" element of DR 1-102(A)(1).

"Knowingly" has two connotations, however. In addition to the knowledge respondent had that his conversations with his client were protected under the attorney-client privilege, the Board may consider in fashioning a remedy the degree and quality of the lawyer's knowledge in committing the violation; for example, whether respondent actually considered the repercussions of the violation on his client. That respondent did not actually understand the duty established by the Code is not the same as whether he committed the violation with knowledge of all probable consequences.

 The Board gave respondent the benefit of the doubt on whether he knew that his disclosure to opposing counsel would cause his client anguish or jeopardize her case. If respondent did not actually know that his conduct would injure his client— his conduct being negligent because of his good intention (good faith) in making the disclosure—he still knew that his conduct violated a confidence. He nevertheless misunderstood his duty to disclose under the circumstances. If this is, for all practical purposes, negligence, we still fail to find error in the Board's determination that a public reprimand is the appropriate sanction.

Regardless of the Board's characterization of respondent's mental culpability, the Board's recommendation of reprimand is consistent with the prevailing standards for determining sanctions under such circumstances. The ABA Standards advise public reprimand, even though the attorney may have acted in

good faith and was merely negligent. That is as far as the Board went in its recommendation of discipline.

The Board found that complainant suffered "emotional distress" as a result of the disclosure, which "heightened her level of fear and anxiety." Respondent complains that the Board did not sufficiently analyze the level of seriousness of the injury in light of the ABA Standard recommending at least a public reprimand when "injury or potential injury to a client" occurs. Further analysis, however, seems unnecessary in this case. As the Board discussed:

> Complainant was shocked by this news. She had relied upon respondent to protect the confidentiality of this information. She felt that Respondent had betrayed her trust.
>
> . . . .
>
> Respondent's conduct was injurious to his client to the extent that his actions caused her emotional distress. We do not find, however, that the disclosure had an adverse impact on the pending litigation although there was a potential for such injury.

That fairly sums up a finding of more than "little or no actual or potential injury," justifying more than a private admonition.

Respondent also complains that the Board did not credit him with sufficient mitigating factors, and failed to acknowledge his cooperative attitude, his good character and reputation, and the delay in the proceedings. The Board's decision, however, implicitly recognizes all of these factors to the extent they are warranted. The Board did not indicate a dim view of respondent's character or his cooperation. It spoke highly of him: "In mitigation we find an absence of a prior disciplinary record and the absence of a dishonest or selfish motive. Furthermore, it is clear from Respondent's testimony that he understands fully the nature of his misconduct and that he would not commit a like violation in the future." Respondent was himself responsible for some of the delay, and we fail to see how he was prejudiced by it.

Next, respondent argues that a public reprimand here would be disproportionate to other recent more serious cases imposing the same sanction, citing four examples. Respondent's conclusory argument does not persuade us that the sanction imposed on him demonstrates an inconsistent approach.

We adhere to the Board's recommendation. Respondent's infraction violated a core component of the attorney-client relationship, of which he, as an attorney in practice in this state for approximately sixteen years at the time of the infraction, should have been well aware. Respondent does not contend, nor does the record reflect, that his disclosure was intended or necessary to protect the child. His hope that opposing counsel would not disclose the information to the husband demonstrates naivete, rather than any intent to simply disregard his client's confidence. Consequently, we agree with the Board that a suspension would be too harsh. On the other hand, a private admonition would unduly depreciate the violation.

According to ABA Standard 1.2., it is "[o]nly in cases of minor misconduct, when there is little or no injury to a client, the public, the legal system, or the profession, and when there is little likelihood of repetition by the lawyer" that private discipline is appropriate. The Board found and we agree that respondent "will not make a similar error in the future," but complainant was obviously injured by the disclosure. Persons seek a lawyer's help not just for a favorable outcome or sage advice, but for the peace of mind that their interests are being taken into account and protected. Public reprimand is appropriate under the circumstances.

■ Respondent's contention that the Board erred by not making separate findings is without merit. Administrative Order 9, Rule 8D, does not require the Board issue a separate written decision in a case where, as here, the Board agreed wholly with the findings, conclusions, and recommendations of the panel. Adoption of the hearing panel's decision is sufficient where the rationale for the outcome is apparent.

■ Last, we find no due process violation in the Board's issuance of its decision prior to the receipt of respondent's brief by all its members. Respondent was advised by a letter dated February 18, 1992, that his brief was to be submitted to each member of the Board "on or before March 9, 1992." Respondent concedes that his brief, dated March 9, was also mailed on that date; we must therefore conclude that it was not received by members of the Board by the deadline. Any injury that may have resulted, therefore, was not attributable to the Board.

*The decision of the Professional Conduct Board is affirmed and its recommendation for discipline is approved. Thomas Pressly is publicly reprimanded for violation of DR 4-101(B)(1) of the Code of Professional Responsibility by knowingly revealing a confidence of his client.*