### In re Peter J. MORRISSETTE, Esq.

[636 A.2d. 329]

No. 93-401

November 16, 1993. Pursuant to the recommendation of the Professional Conduct Board filed October 8, 1993, and approval thereof, it is hereby ordered that Peter J. Morrissette, Esq., be publicly reprimanded for the reasons set forth in the Board's Notice of Decision attached hereto for publication as part of the order of this Court. A.O. 9, Rule 8E.

### NOTICE OF DECISION

This matter came before the Professional Conduct Board by way of a stipulation entered into by bar counsel and respondent. Upon consideration of that stipulation, the Board hereby makes the following findings of fact, conclusions of law, and recommended sanction.

### FACTS

1. Respondent, Peter J. Morrissette, was admitted to the Vermont bar in 1968.

2. In 1982 Mr. Morrissette represented Frank and Paul Damazo, both out-of-state residents, in the sale of a parcel of land in a subdivision created by them to Mr. and Mrs. James McDonald. At the request of Mr. and Mrs. McDonald, Mr. Morrissette also represented them in connection with the transaction.

3. Before Mr. Morrissette was retained or consulted, the Damazos and the McDonalds had entered into a written purchase and sale agreement drafted by or with the help of a real estate broker. Mr. Morrissette was retained by the Damazos to draft a warranty deed and other closing documents and by the McDonalds to perform a title search.

4. There was a great deal of time pressure surrounding the transaction. The binding purchase and sale contract was entered into under date of June 17, 1982, and specified a closing date of June 18, 1982.

5. Mr. Morrissette advised each party that he was also representing the other, but he did not fully explain any potential problems with dual representation.

6. At the closing, the parties themselves negotiated a right of first refusal in favor of the McDonalds on certain other lands belonging to the Damazos and bordering upon the parcel being conveyed to the McDonalds. Although Mr. Morrissette was present at the closing where these negotiations occurred, there is no evidence that he participated in the discussions.

7. The McDonalds wanted the following assurances regarding development on certain neighboring land within the subdivision:

— that the land be kept in a clean condition;

— that there be no mobile homes on the land; and

— that only one single-family dwelling would be constructed per ten acres.

The McDonalds further wanted the right of first refusal with respect to neighboring lands to protect themselves in the event that potential buyers were not willing to agree to these restrictions.

8. Mr. Morrissette denies that he knew, at the time of closing, the existence or the substance of any specific restrictions to which the Damazos and McDonalds agreed. No requirement that such restrictions be imposed was included within the Damazo-McDonald warranty deed, which incorporated the right of first refusal negotiated by the parties.

9. Mr. Morrissette was aware that the parties had negotiated a right of first refusal and that the right of first refusal was incorporated in the Damazo-McDonald warranty deed, as he drafted the deed.

10. The language which Mr. Morrissette added to the warranty deed is as follows:

> There is included with the conveyance of these premises to the Grantees herein, the first option to purchase any of those premises of the Grantors herein bounded [followed by a description]. The Grantees shall have a period of 15 days from the time they are notified by the Grantors of the Grantors' intention to sell all or a part of the premises, to notify the Grantors of their intention to purchase said premises *on the same terms and conditions* on which the Grantors are prepared to sell all or a part of said premises to a third party. (Emphasis added.)

11. The McDonalds were financially able at all times to assert their right of first refusal on any and all of the property included in the right.

12. On at least two occasions, the McDonalds declined to exercise their right of first refusal because the property was sold subject to the three restrictions described above. These deeds, with the rest, had been prepared by Mr. Morrissette on behalf of the Damazos.

13. In January 1983, the McDonalds were asked by a realtor to sign a quitclaim deed releasing their right of first refusal with respect to a parcel within the Damazo subdivision about to be purchased by Caroline Nicholas. Mr. McDonald was presented by the realtor with a copy of the proposed warranty deed from the Damazos to Caroline Nicholas. This warranty deed had been prepared by Mr. Morrissette. Mr. McDonald per-

sonally reviewed the proposed warranty deed from Damazo to Nicholas, verified that the three restrictions outlined above appeared in the deed, and the McDonalds signed the quitclaim deed releasing their right of first refusal. The release of the right of first refusal recited that the subject land was to be conveyed by the Damazos to Caroline Nicholas.

14. Mr. Morrissette had prepared the quitclaim deed releasing the right of first refusal and was aware that the McDonalds had signed it. Mr. Morrissette had not spoken to the McDonalds about the release and was not personally aware of the McDonalds' reasons for executing it.

15. The sale to Caroline Nicholas fell through for reasons having nothing to do with the right of first refusal.

16. Approximately eleven months later, Mr. and Mrs. Cornelius Cronin expressed an interest in purchasing the same parcel.

17. Mr. Morrissette did not prepare a new release of the right of first refusal for presentation to the McDonalds. Instead, erroneously believing that the name of Nicholas on the executed release was surplusage and not material, he typed over the Nicholas name and substituted the name of Cronin, the new purchasers.

18. Mr. Morrissette should have known that once the purchaser's name was placed by him in the release deed it became a material component of that deed, which could not be changed after execution.

19. The deed from the Damazos to Cronin differed from the proposed deed to Caroline Nicholas. Before the Cronin deed was executed, Mr. Morrissette crossed out the restriction on the number of dwellings and inserted a 15-year limitation on the requirement to keep the land in a clean condition and on the prohibition of mobile homes.

20. As a result of the alteration of the restructions by Mr. Morrissette, the McDonalds were not offered the parcel in issue on the same terms and conditions as were the Cronins, as required by the terms of the right of first refusal.

21. Mr. Morrissette should have known that the alteration of the restrictions in the warranty deed materially affected the McDonalds' rights and interests in their land and in the land surrounding them.

22. As a result of Mr. Morrissette's actions, the McDonalds realized a diminution in the value of their land. They also suffered aggravation and inconvenience.

23. Litigation resulted concerning the foregoing but was settled in advance of trial. Mr. Morrissette's portion of the settlement came partially from his insurance carrier and partially from his own funds.

24. The Damazos also settled the claim against them, therefore suffering injury as well.

25. Mr. Morrissette also represented a Silas Axtel in an unrelated 1984 purchase of Damazo land in which he also represented the Damazos.

## CONCLUSIONS OF LAW

26. DR 5-105(A) prohibits a lawyer from representing a client if the interests of another client may impair the attorney's judgment. Multiple representation is allowed, however,

> if it is obvious that [the attorney] can adequately represent the interests of each and if each consents to the representation after full disclosure of the possible effect of such representation . . . .

DR 5-105(C).

27. The Board finds that Mr. Morrissette violated DR 5-105. While at the outset of the McDonald-Damazo

transaction, it may have appeared obvious that Mr. Morrissette could adequately represent the interests of each of the parties, that situation changed when the parties entered into the negotiation of a right of first refusal. At this point, at least the potential of adverse interests arose, thus making it no longer obvious that Mr. Morrissette could adequately represent the interests of both parties. By continuing to represent them, Mr. Morrissette violated DR 5-105(C).

28. Mr. Morrissette also violated DR 5-105(C) by not providing the parties with the "full disclosure" of the possible effects of dual representation. See Annotation, *Attorney and Client: Conflict of Interest in Real Estate Closing Situations,* 68 A.L.R.3d 967, 973 (1976) ("While it is clear that a layman cannot be expected to understand all potential conflicts which may arise, it would appear that an attorney has a duty to at least attempt to make a client aware of those conflicts which seem reasonably likely to arise in the client's particular situation.").

29. The alteration of fully-executed legal documents is very serious misconduct. Once respondent included Caroline Nicholas as the purchaser in the quitclaim release deed, it became a material condition of the deed. By altering the restrictions in the unexecuted Nicholas deed which had been proffered to the McDonalds, Mr. Morrissette changed the terms and conditions on which the McDonalds had relied in releasing their option. It does not appear that Mr. Morrissette intentionally set out to deceive the McDonalds. However, Mr. Morrissette did alter the deeds intentionally and should have known at the time that such alteration was improper.

30. The facts of the case, read altogether, indicate that respondent was not as diligent, as thorough and as cautious as he should have been.

31. Both the Damazos and the McDonalds were injured by Mr. Morrissette's conduct.

32. Mr. Morrissette violated DR 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and DR 1-102(A)(5) (conduct prejudicial to the administration of justice) by altering the release of the right of first refusal after the McDonalds had signed it. When Mr. Morrissette altered the restrictions on the Cronin warranty deed, before its execution, he failed to take the appropriate steps to ensure that the obligations of the Damazos were properly met, in violation of DR 6-101(A)(2) (handling a legal matter without preparation adequate in the circumstances).

RECOMMENDED SANCTION

33. The following mitigating factors are present in this case:

    A. Respondent has no prior disciplinary record;

    B. Respondent had no selfish or dishonest motive;

    C. Respondent cooperated fully with the disciplinary proceedings; and

    D. Respondent regrets his errors and has changed his real estate practice, exercising more caution.

34. In aggravation, the Board finds that respondent has substantial experience in the practice of law.

35. The duty which Mr. Morrissette violated was the duty owed to his clients to render diligent and competent counsel. His state of mind appeared to be one of negligence. His misconduct caused actual injury to his clients.

36. The relevant ABA Standards On Imposing Lawyer Discipline are 4.43 and 4.63, which support imposi-

tion of a public reprimand. Therefore, the Professional Conduct Board respectfully recommends to the Supreme Court that it publicly reprimand Mr. Morrissette.

## DISSENTING

I believe public reprimand is not strong enough a sanction. It is appalling and frightening to me that there could be even one lawyer in Vermont who is willing to alter an already executed deed. I consider that as serious as using clients' trust funds because it is a stealing of trust. I believe the sanction should be strong enough to send a message to others. I recommend suspension.

Allen, C.J., dissenting. I am unable to concur in the recommended sanction in this matter. The Board included as a mitigating factor the absence of selfish or dishonest motive. The findings, however, are totally devoid of any suggestion as to what the respondent's motives were. The alteration to the release of the right to first refusal and the material change to the convenants in the deed from the Damazos to the Cronins was, as the Board concluded, serious misconduct. I am at a loss as to how this conduct can then be characterized as negligence or be considered as a lack of diligence, thoroughness or caution.

At the very least the matter should be remanded to ascertain the reasons for the alterations. Until this is known, it is impossible to impose an appropriate sanction.