**The PEOPLE of the State of Colorado, Complainant,**

v.

**Gail Eldon SHIELDS, Attorney–Respondent.**

**No. 95SA38.**

Supreme Court of Colorado, En Banc.

Nov. 6, 1995.

---

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Assistant Disciplinary Counsel, Denver, for Complainant.

Dennis B. Polk, Golden, for Attorney–Respondent.

PER CURIAM.

A hearing panel of the supreme court grievance committee approved the factual findings of a hearing board, but modified the board's recommendation of a three-month suspension to suspension for one year and one day. The respondent has excepted to the findings and the recommendation. We accept the panel's recommendation and order that the respondent be suspended for one year and one day.

I

The respondent was admitted to practice law in Colorado in 1973. The hearing board heard testimony from the complainant's and the respondent's witnesses, including the respondent himself. After considering the testimony and the exhibits introduced into evidence, the board made the following findings by clear and convincing evidence.

From 1986 through June 1991, the respondent's law firm had a series of legal services contracts with the Jefferson County Department of Social Services ("Social Services") to assist Social Services as necessary in establishing paternity and support obligations, and to assist in child support enforcement matters. The written form of the agreements in 1990 and 1991 provided that the respondent's charges were to be based solely upon "the number of hours of work by the Attorney, multiplied by [his] hourly rate." No provision allowed for any type of billing not specifically based on the actual amount of time expended by the lawyer. Social Services also made it clear that the respondent was not to bill, and would not be paid for, duplicative

work, such as one lawyer reviewing the work of another lawyer.

In February 1990, the respondent hired another lawyer, Jeffrey S. English, on a sub-contract basis. English did much of the work for the Social Services contract. The hearing board found that English performed the work in a capable manner and to the client's satisfaction. English submitted his itemized time records for the Social Services work to the respondent on the respondent's forms on a monthly basis. The respondent then paid English for English's itemized time at the rate of $40.00 per hour beginning February 1990, and $47.50 per hour from March 1991 to June 1991. Social Services paid the respondent $90.00 per hour for the corresponding time in 1990, and $100.00 per hour in 1991.

Beginning in April 1990, and continuing through May 1991, the respondent consistently increased the amount of English's billing time in statements submitted to Social Services, although the respondent knew that English had not worked the increased time on the itemized tasks. The amounts paid to the respondent by Social Services were therefore increased. English discovered in May 1991 that the respondent had been marking up the time English spent on Social Services matters. After first confronting the respondent, English advised Social Services of the respondent's practices.

The hearing board determined that the total amount received by the respondent from Social Services was $7,000 in excess of what the respondent would have received if English's time had been correctly stated in the bills submitted by the respondent. The respondent also billed time spent by a law clerk or by a newly admitted lawyer as his own, including about 5.5 hours in May 1991.

The respondent testified that he was only incorporating into English's charges the time the respondent spent reviewing English's work. To support this, the respondent submitted a copy of his day-timer into evidence which purportedly showed that he did on occasion review English's work. The respondent's records indicate that on 150 occasions he increased English's time from 0.25 to 0.75 hours for matters related to preparing re-

sponses to motions or objections, to reflect the time the respondent supposedly spent reviewing the work.

English testified that these were routine matters which did not justify more than the minimum 0.25 hours. The respondent testified on the other hand that many of the matters were unique and complicated, that he did not have confidence in English's work, and that the additional 0.5 hours was necessary for him to review the file and the proposed response.

The hearing board concluded, however, that the "Respondent's position is not credible under the circumstances." First, if respondent really thought that English's work was unsatisfactory, he would have performed the work himself. Moreover, the respondent was already receiving a $50.00 to $52.50 mark-up on English's actual time (representing the difference between the hourly rate Social Services paid and English's hourly rate). He was therefore being compensated for his "review" time before he marked up English's time. Further, respondent knew that he was not to bill for duplicative work, including the time of one attorney reviewing the work of another attorney because the contract did not permit such charges or payment.

The hearing board also found that the respondent's timekeeping and billing records contained inconsistencies. For example, the respondent increased English's time on bills sent to Social Services on many occasions where there are no corresponding notations in the respondent's day-timer, which was supposed to reflect time spent by the respondent on the relevant files. Second, review entries that were contained in the day-timer were frequently made at the end of the section for a particular day. The originals of the day-timers reveal that the review entries were often made with a different style of pen than the other entries for that day.

Moreover, none of these entries appeared in one draft of a bill to be sent (a "pre-bill") dated May 31, 1991. Although the respondent tried to explain otherwise, the board determined, based on the testimony of the respondent's secretary, that had these en-

tries in fact been made before the pre-bill was prepared, they would have appeared on the pre-bill. The secretary stated that her policy was to include on the pre-bill everything that appeared on the respondent's day-timer, and that it was the respondent's responsibility, not hers, to eliminate unwanted charges.

The hearing board found "that the disputed time was, in fact, value billing, that it was not based on the time it would take one attorney to do the work, that it was not authorized by Social Services, and that it was in violation of the contract between the parties." Therefore, the board concluded that the respondent "misrepresented facts in his invoices to Social Services to procure a higher fee than he would have been entitled to had Social Services been advised of the true facts." Significantly, the board further found "that such was done by Respondent intentionally and not negligently."

The respondent's conduct thereby violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); as well as DR 2–106(A) (a lawyer shall not collect an illegal or clearly excessive fee).

## II

■ The hearing board recommended that the respondent be suspended for three months. When it approved the factual findings and conclusions, however, the hearing panel modified the recommended discipline to suspension for one year and one day.[1] The respondent excepted to the findings and recommendation.

## A

■ The respondent disputes the factual findings of the board and argues that they are not supported by substantial evidence in the record. The board found as follows: The respondent billed Social Services for time

that was not actually devoted to work contemplated by the contract, and for time not actually performed by English or the respondent or any other lawyer. The respondent knew at the time he submitted the inaccurate bills to Social Services that his billing statements misrepresented many of the attorney time notations and, as a consequence, he knew they were fictitious and therefore fraudulent.

When they are approved by the hearing panel, the board's factual findings are binding on this court unless, after considering the record as a whole, the findings are unsupported by substantial evidence. *People v. Genchi,* 824 P.2d 815, 817 (Colo. 1992); *People v. Bennett,* 810 P.2d 661, 665 (Colo.1991). When acting as a fact finder, the hearing board has the duty to assess the credibility of evidence before it, controverted and uncontroverted. *People v. Distel,* 759 P.2d 654, 662 (Colo.1988).

*People v. Dieters,* 825 P.2d 478, 481 (Colo. 1992). Having examined the record of the testimony and the exhibits introduced into evidence, we conclude that the hearing board's factual findings, including its opinion that the respondent's explanations were not credible, are amply supported by the record, and we decline to overturn them. Given the factual findings, the board properly determined that the respondent's mental state at the time of the misconduct was intentional, and that he violated both DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and DR 2–106(A) (collecting an illegal or clearly excessive fee).

## B

■ The respondent also maintains that if discipline is warranted, suspension for one year and one day is too severe. We disagree. At the least, a period of suspension is required for the misconduct in this case. The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Stan-*

---

1. The respondent complains that the hearing panel should not have modified the board's recommendation of discipline because it was not in the same position as the board, which had "the benefit of a full review of the record and actual live presentation of witnesses." Nevertheless, C.R.C.P. 241.15(b) expressly permits the panel to

modify the board's recommendation. In any event, the recommendation of the grievance committee concerning lawyer discipline is only advisory, and this court retains the independent authority to determine the appropriate level of discipline. *People v. Anderson,* 828 P.2d 228, 233 (Colo.1992).

*dards* ) provides that, in the absence of mitigating circumstances, "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client." ABA *Standards* 4.61. On the other hand, "[s]uspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client." *Id.* at 4.62.

The only mitigating factor the board found was the absence of a prior disciplinary record. *Id.* at 9.32(a). We agree with the board that no other mitigating factors have been shown. The failure of a client to complain to the grievance committee or disciplinary counsel is neither an aggravating nor mitigating factor. ABA *Standards* 9.4(f). Whether or not Social Services was satisfied with the work respondent actually performed or with his billing practices as to that work (and the record contains evidence supporting such conclusions), is not significant for purposes of assessing appropriate discipline.

In aggravation, the respondent had a dishonest or selfish motive, *id.* at 9.22(b); the respondent has refused to acknowledge the wrongfulness of his conduct, *id.* at 9.22(g); and he has substantial experience in the practice of law, *id.* at 9.22(i).

In *People v. Walker,* 832 P.2d 935, 936 (Colo.1992), we held that a lawyer's overbilling for travel time and court time spent while the lawyer was serving by appointment resulted in the charging of an excessive fee, and warranted a ninety-day suspension. The lawyer in *Walker* recognized the nature of his wrongdoing as evidenced by his entering into a conditional admission of misconduct. *Id.* at 935–36. Nevertheless, three members of the court would have rejected the conditional admission because the range of discipline agreed to was too lenient. *Id.* at 936–37.

The respondent in this case has steadfastly refused to acknowledge that he has done anything wrong, and the hearing board found portions of respondent's testimony not credible. Moreover, we believe that a short period of suspension would not adequately protect the public. Accordingly, we accept the hearing panel's recommendation.

### III

It is hereby ordered that Gail Eldon Shields be suspended from the practice of law for one year and one day, effective thirty days after the issuance of this opinion. C.R.C.P. 241.21(a). It is further ordered that Shields pay the costs of this proceeding in the amount of $509.95 to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202, within thirty days after the announcement of this opinion. Shields shall not be reinstated until after he has complied with C.R.C.P. 241.22(b)–(d).