1999 OK 48

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Paul W. DUDMAN, Respondent.**

**No. SCBD 4384.**

Supreme Court of Oklahoma.

May 25, 1999.

As Corrected June 10, 1999.

Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

George S. Corbyn, Jr., Oklahoma City, Oklahoma, for Respondent.

HODGES, J.

¶ 1   In this matter, the Oklahoma Bar Association (Bar) requests a private reprimand against the recommendation of the Professional Responsibility Tribunal (PRT) that no discipline should be imposed. This Court adopts the recommendation of the PRT.

¶ 2   Paul Dudman (Respondent) was admitted to practice law in England in 1974 and in Oklahoma in 1975. By 1978 he had become a partner in the firm of Fellers, Snider,

25. *Michigan v. Long*, 463 U.S. 1032, 1042, 103   S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983).

Blankenship, Bailey & Tippens (the Fellers Firm). In 1994, he became of counsel and remains so today. Respondent has never had a bar complaint, until this one.

¶ 3  The Fellers Firm represented Townley's Dairy Company (Townley's) in various matters from 1972 until Townley's sold most of its assets to Farm Fresh, Inc. in July, 1993, and ceased operations. The Fellers Firm, specifically Respondent, represented Townley's in the negotiations and drafting of the lease purchase agreement. As part of that agreement, Townley's President, Guy Townley, became an employee of Farm Fresh for a five year period as manager of the institutional sales division. So long as Mr. Townley was not fired for cause, he could repurchase the Townley's tradenames, logos, and trademarks for one dollar.

¶ 4  In the Spring of 1996, Farm Fresh made contact with Thomas Enis of the Fellers Firm to inquire whether Mr. Enis would perform the duties of general counsel for Farm Fresh. In April of that year, Mr. Enis circulated a conflict of interest check to see if any member of the firm had any conflict which would preclude taking on Farm Fresh as a new client. Respondent initialed the check, accurately indicating that he knew of no conflict which would prevent the firm from representing Farm Fresh as general counsel. No negative reports resulted from the check. The firm undertook representation apparently telling Farm Fresh that it could not represent it in any dispute with Townley's or Guy Townley. However, no one in the firm told Respondent that the firm had actually undertaken representation of Farm Fresh.

¶ 5  On May 20, 1996, Farm Fresh removed Guy Townley as manager of its institutional sales division. It continued, however, to employ him. On May 24th, Guy Townley met with Respondent. Both men were unaware that the Fellers Firm now represented Farm Fresh. Respondent did not file a new conflict of interest check because he had represented Guy Townley three years earlier. Mr. Townley was concerned that Farm Fresh was about to terminate his employment. Respondent advised him to continue his employment and see

what would happen. Mr. Townley was fired "for cause" on June 17, 1996.

¶ 6  Between the time of the meeting and Guy Townley's firing, Respondent stumbled across the fact that his firm was working for Farm Fresh. When Guy Townley called Respondent to inform him that he had been fired, Respondent advised him that his firm could not represent him in an action against Farm Fresh. Respondent offered to provide a list of attorneys who might represent him. Mr. Townley obtained other counsel and sued Farm Fresh for refusing to allow him to repurchase the Townley's tradenames, logos, and trademarks.

¶ 7  On September 9, 1997, Townley's Dairy listed Respondent as a witness in the *Townley v. Farm Fresh, Inc.* lawsuit. The Tulsa Firm representing Farm Fresh wanted Respondent to sign an affidavit. Respondent refused but then consulted a litigator in his firm who advised him to execute the affidavit.

¶ 8  The affidavit recited that (1) Respondent had represented Townley's and Mr. Townley in connection with the lease purchase agreement, (2) that he had attended one meeting with Mr. Townley, Farm Fresh, and Farm Fresh attorneys, and (3) that his efforts culminated in the lease purchase agreement. These facts were all commonly known and were undisputed in the litigation. The affidavit also listed provisions in the agreement, something which could be derived by merely reading it.

¶ 9  As stipulated by the Bar, the affidavit contained no information which operated to the disadvantage of Mr. Townley or Townley's Dairy. Mr. Townley apparently disagreed, as he is the one who initiated the Bar complaint. The trial panel of the PRT found no discipline should be imposed. The Bar requests a private reprimand.

¶ 10  The Bar asserts two violations of the Oklahoma Rules of Professional Conduct. Rule 1.7 prohibits a lawyer from representing a client if the representation will be directly adverse to another client. The comment to that Rule states that a lawyer "should adopt reasonable procedures appropriate for the size and type of firm and practice, to determine in both litigation and

non-litigation matters the parties and issues involved and to determine whether there are actual or potential conflicts of interest." Rule 1.10 explains that "[w]hile lawyers are associated in a firm, none of them shall *knowingly* represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8, 1.9 or 2.2". (emphasis added).

¶ 11 Respondent has stipulated to a violation of Rule 1.7. He admits that he should have circulated a conflict of interest inquiry concerning his potential representation of Mr. Townley against Farm Fresh when Mr. Townley called him prior to their meeting. His failure to do so is at least to some degree understandable as Mr. Townley was not a new client.

■ ¶ 12 The PRT acknowledged the technical violation of Rule 1.7 to which Respondent had stipulated, but found several mitigating circumstances resulting in a recommendation that no discipline be imposed. These include:

> the absence of a prior disciplinary record of Respondent, the absence of any dishonest or selfish motive by Respondent in the circumstances that resulted in the violation, the timely good faith effort by Respondent to rectify the consequences of his misconduct, the Respondent's full disclosure to the Complainant and to the Trial Panel, the Respondent's cooperative attitude toward the disciplinary proceedings and the excellent reputation of the Respondent in the Oklahoma City community.

¶ 13 The Bar acknowledges that "[t]he primary consideration, in determining whether an individual attorney is to be disciplined, concerns the welfare of the public and the proper administration of justice." *Oklahoma Bar Assoc. v. Booth,* 441 P.2d 405, 407 (1966). It further urges that "even 'good guys'" cannot violate the Rules with impunity. While that is true, an unintentional violation, followed by every effort to do the right thing, would seem to make discipline inappropriate. In addition, a private reprimand would do nothing to educate the Bar concerning this rule. Thus, no discipline will be imposed based on this Rule 1.7 violation.

■ ¶ 14 As to the allegation of a Rule 1.8(b) violation, that Rule provides that "[a] lawyer shall not use information relating to the representation of a client to the disadvantage of the client...." The Trial Panel found no violation of this rule. It seems most likely that this was because, as the Bar stipulated, "[t]he affidavit did not contain any information relating to [Respondent's] representation of Mr. Townley which operated to the disadvantage of Mr. Townley or Townley's Dairy." With the "disadvantage of the client" element absent, there can be no violation of Rule 1.8(b) and no discipline can be imposed. The Trial Panel correctly concluded that no discipline should be imposed in this matter.

NO DISCIPLINE IMPOSED.

¶ 15 HARGRAVE, V.C.J., LAVENDER, SIMMS, ALMA WILSON, WATT, JJ.,— concur.

¶ 16 SUMMERS, C.J., KAUGER, J.,— not participating.

¶ 17 OPALA, J.—disqualified.