# In re Melvin D. Fink, Esq.

[764 A.2d 1208]

No. 99-558

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed October 27, 2000

*Stephen S. Blodgett*, Special Bar Counsel, Burlington, for Appellant.

*Melvin D. Fink* of *Fink and Birmingham, P.C.*, Ludlow, Appellee.

**Skoglund, J.** Appellant Special Bar Counsel filed a petition of misconduct against appellee-attorney, alleging that appellee had violated DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and DR 7-102(A)(7) (counseling client in conduct attorney knows to be illegal or fraudulent) of the Code of Professional Responsibility.* A hearing panel held a hearing, concluded that appellee had violated DR 1-102(A)(4), but not 7-102(A)(7), and recommended a sanction. The Professional Conduct Board (Board) subsequently held a hearing and adopted the panel's findings of fact, but concluded that appellee had not violated either DR 1-102(A)(4) or 7-102(A)(7), and dismissed the petition. Special Bar Counsel appeals the Board's conclusion that appellee had not violated DR 1-102(A)(4). We affirm.

The relevant facts are not in dispute. Appellee represented Robin Bushey in a divorce matter and assisted in preparing the parties' stipulated itemized division of personal property. The final divorce order incorporated the stipulation and further provided: "Each of the parties is awarded the personal property in his or her possession free and clear of any and all marital right or claim of the other . . . ."

---

* As of September 1999, Vermont follows the Rules of Professional Conduct. There is no question that this case is governed by the Code of Professional Responsibility.

Neither the stipulation nor the final divorce order made reference to a Subaru automobile that Bushey had in her possession at the time the final divorce order was issued. As the Board stated: "While it would have been better practice to itemize such a significant item of personal property to avoid all confusion, it is clear that the client, Robin, was to have complete ownership rights in that vehicle."

A few months after the final divorce order was issued, Bushey decided to trade in the Subaru. When she realized that her ex-husband's name was on the certificate of title, and that, in order to trade in the car, she needed her ex-husband's signature, she called appellee and asked if she could sign her ex-husband's name. Relying on the above-quoted provision of the divorce decree, and upon something he recalled reading in a legal treatise several years earlier, appellee told Bushey that she could. When she traded in the car, Bushey signed her ex-husband's name, but did not tell the dealer that she had done so. The legal treatise appellee relied upon turned out to be inapplicable. Prior to giving his client the above-noted advice, appellee failed to conduct legal research on the issue. Had he done so, he might have discovered 23 V.S.A. § 2025 (involuntary transfers), under which Bushey could obtain a new title to the automobile under circumstances such as presented in this case.

The hearing panel, whose findings were adopted by the Board, stated:

> We find respondent's testimony that he did not believe that there was any harm to Jeffrey Bushey because of the provisions of the divorce decree giving Robin the Subaru automobile truthful. . . . [W]e find that he gave her the advice to sign Jeffrey Bushey's name because he thought it was the simplest resolution of her problem and had, in Respondent's mind, was [sic] a minimal risk of adverse consequences.

The panel concluded that appellee had violated DR 1-102(A)(4), stating:

> [B]y signing the name of Jeffrey Bushey, Robin Bushey made a misrepresentation and deceived the dealership. . . . In telling Robin Bushey that she could sign Jeffrey Bushey's name on the certificate of title, he intended her to rely on that advice to sign Jeffrey Bushey's name, and he knew that she would rely on his advice in signing Jeffrey Bushey's name on the certificate of title, and that she did so.

The Board reversed. While noting that appellee may have provided legal advice without adequate preparation, the Board could not find "by clear and convincing evidence that Respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of DR 1-102(A)(4)."

DR 1-102(A)(4) provides: "A lawyer shall not: . . . [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Here, appellee was familiar with the final divorce order that awarded the parties the property in their possession; he knew the Subaru was in Bushey's possession; he believed his advice was supported by a legal treatise; and he believed that advising Bushey that she could sign her ex-husband's name would cause no harm to anyone. Appellee's major transgression was that he failed to conduct adequate legal research. Given these facts, we agree with the Board that, while appellee's conduct may have been sufficient to conclude that he violated DR 6-101(A)(2) (attorney shall not handle legal matter without adequate preparation), the advice he gave Bushey did not constitute dishonesty, fraud, deceit, or misrepresentation.

The cases in which we have upheld the determination that an attorney has violated DR 1-102(A)(4) involve facts much more egregious than those of the instant case. See *In re Karpin*, 162 Vt. 163, 170-71, 647 A.2d 700, 704-05 (1993) (attorney instructed office worker to forge and notarize client's signature on affidavit, and made false assertions in memorandum to court; when forgery and false assertions were discovered, attorney lied to magistrate and drafted two affidavits, which he had office worker sign two months apart, stating she had mistakenly signed original affidavit); *In re Bucknam*, 160 Vt. 355, 367, 628 A.2d 932, 939 (1993) (attorney misrepresented status of case to clients; attempted to alter implied fee agreement; negligently failed to supply detailed accounting of expenses; and acted vindictively toward clients by refusing to provide them with retainer agreement, revising offer to successor counsel concerning potential recovery, and retaining clients' file to pressure them into paying expenses legitimately in dispute).

The same is true of other jurisdictions applying DR 1-102(A)(4), with language identical to Vermont's rule. See *People v. Shields*, 905 P.2d 608, 611 (Colo. 1995) (attorney engaged in fraudulent billing practices); *People v. McDowell*, 718 P.2d 541, 543-46 (Colo. 1986) (attorney represented both buyer and seller of corporation and failed to tell buyer that three judgments had previously been entered against corporation; thus, attorney "knowingly withheld highly ma-

terial information from his client, with the result that the client was given an untrue picture of the financial condition of the business he was about to purchase"); *Committee on Prof'l Ethics & Conduct of Iowa State Bar Ass'n v. Davidson*, 398 N.W.2d 856, 858 (Iowa 1987) (where attorney for estate filed for and collected payment for unauthorized trip, then later took trip solely to justify receiving payment, court stated: "This action by Davidson, seeking approval by the court for compensation for services never requested by the trustees nor authorized by the will . . . constitutes a blatant misrepresentation to the court . . . ."); *Louisiana State Bar Ass'n v. Nabonne*, 539 So. 2d 1207, 1210 (La. 1989) (attorney allowed statute of limitations to expire on client's lawsuit, then "deceived his client into thinking that a suit was pending by showing the client sham pleadings which were confected solely for the purpose of promoting the deception"); *In re Kranis*, 219 A.D.2d 278, 279 (N.Y. 1996) (attorney "blatantly neglected cases entrusted to him by five clients and misled those clients into believing that the cases were being actively pursued"); *State ex rel. Oklahoma Bar Ass'n v. Moore*, 741 P.2d 445, 446-48 (Okla. 1987) (attorney used estate funds for own purposes; submitted fraudulent tax return, forcing heir to mortgage property to pay taxes; forged names of co-executors, and altered documents); *In re Hockett*, 734 P.2d 877, 883 (Or. 1987) (attorney assisted clients in fraudulent transfers with intent to cheat creditors of their lawful debts).

In cases with facts similar to those of the instant case, applying DR 1-102(A)(4), with language identical to Vermont's rule, courts have concluded that the attorney did not violate the rule. See *In re Bargman*, 704 N.Y.S.2d 25, 25-26 (App. Div. 2000) (no violation of DR 1-102(A)(4) where attorney represented seller in real estate transaction; buyer gave attorney $14,000 in escrow; attorney asked seller if he could use money; seller said yes, and attorney did, believing seller's permission was sufficient); see also *Committee on Prof'l Ethics & Conduct of Iowa State Bar Ass'n v. Bitter*, 279 N.W.2d 521, 526 (Iowa 1979) (attorney did not violate DR 1-102(A)(4) where he did not fully represent facts in motion for extension of time; "rule does not apply to mere negligence, and would not be violated by acts resulting from 'haste' or 'oversight' . . . , absent other aggravating circumstances"); *In re Disselhorst*, 444 N.W.2d 334, 338 (N.D. 1989) (attorney who negligently failed to return numerous client phone calls, failed to send child custody papers to successor attorney, and failed to return retainer until after client filed complaint, did not violate DR 1-102(A)(4)).

We conclude that, under the facts of this case, appellee did not violate DR 1-102(A)(4).

*Affirmed.*

**Morse, J.**, concurring. I concur, but point out that my vote to affirm the Board rests essentially on the standard of review that, in my view, is best suited to appeals of this nature.

The Board is akin to a jury, and must exercise judgment to temper arguably technical violations of the Code with a collective view of fairness. See *In re Pressly*, 160 Vt. 319, 322, 628 A.2d 927, 929 (1993) (Court gives deference to Board's recommendations on sanctions); see also Administrative Order No. 9, Rule 1(F)(3) (version in effect prior to September 1, 1999 revision) (Board charged with responsibility to make findings concerning attorney conduct). This exercise of judgment by a majority of the Board could be ignored by this Court, as if we were the judges of the facts, but, in my view, that would be a mistaken exercise of appellate review. See *Pressly*, 160 Vt. at 322, 628 A.2d at 929 (this Court must uphold Board's findings unless clearly erroneous).

The Court in this case has not defined the applicable standard of review. The dissenting members of the Court have essentially substituted their judgment for that of the Board's, an improper standard, in my view. I would pay deference to the Board's assessment of the attorney's conduct, and not second guess its conclusion unless clearly unreasonable. Where reasonable people might differ on the outcome, we should defer to the judgment of the Board.

Furthermore, even assuming that respondent violated the provision of the Code with which he was charged, the dissenting Justices overstate the severity of the violation and the need for sanctions. There was no evidence that the attorney here willfully committed fraud, deceit, or misrepresentation. Nor was there any evidence of a pattern of prior misconduct, or of a venal or dishonest motive. Indeed, the Board's factual findings, which are not challenged by the dissenters, establish that the attorney believed, however foolishly, that he was giving sound legal advice. This amounts at most to negligence, not to intentional fraud and deceit.

Not every technical violation of the Code requires the imposition of discipline. See *State ex rel. Oklahoma Bar Ass'n v. Dudman*, 981 P.2d 314, 316 (Okla. 1999) (attorney's unintentional violation of rule did not warrant imposition of discipline). Rather, the Board must consider whether discipline is required, and the degree to be imposed, through

a reasonable and reasoned process, taking into account the seriousness of the transgression, the presence of a dishonest or selfish motive, whether there has been a pattern of impropriety, and the effect of the violation on the public and the administration of justice. See Model Rules for Lawyer Disciplinary Enforcement, Rule 10 cmt. (1996) (imposition of sanction may depend upon variety of mitigating and aggravating factors).

Therefore, even if the dissenting Justices were correct that a violation occurred in this case, I would not be persuaded that the Board's decision should be reversed and the matter remanded for the imposition of sanctions.

**Dooley, J.,** dissenting. I agree with Justice Johnson's dissent and write separately to address the additional rationale cited by the Board for its decision. Appellee defended his conduct by stating that he had read in Corpus Juris Secundum some 5 or 10 years earlier that under circumstances like those present in this case his client had the implied agency to forge her husband's signature. He could not later, however, produce this reference. The Board accepted this defense and found that, even though there is no support in C.J.S. for the advice given by appellee, and as a result, he may have violated a requirement of adequate preparation, he thought he was giving proper advice and did not act dishonestly or fraudulently.

I am very troubled by the "I once read it in a book" defense, and the Board's acceptance of it. I recognize that one can find many broad legal propositions in legal treatises, some in direct conflict with others. But, if the public is to have any confidence in the integrity of the enforcement of ethical standards, there must be a limit to a claim that ethical misconduct is excused because the lawyer remembers once reading somewhere that the misconduct is legally acceptable.

This case lies beyond any reasonable limit. The whole purpose of forging a signature is to misrepresent that the signator has agreed to be bound to the legal document involved. By definition, a forged signature is a fraud on the person whose signature is forged, as well as any person who acts in reliance upon the signature. A claim that something in C.J.S. would say that such a forgery is lawful is patently incredible and unacceptable for a profession that promises the public knowledge, competency, and judgment.

I am sensitive to Justice Morse's point that we must employ a standard of review that gives deference to the Board's application of the Code of Professional Conduct. I also believe, however, that this Court must be accountable to the citizens of Vermont in enforcing

ethical norms to ensure public trust and confidence in the legal profession. Reluctantly, I conclude that the Board's decision in this case cannot be squared with our duty to the public.

I respectfully dissent from the dismissal of the complaint and would remand for the Board to impose an appropriate sanction. I am authorized to say that Justice Johnson joins in this dissent.

**Johnson, J.**, dissenting. I do not believe that today's decision can be squared with the plain wording of the Code of Professional Conduct. The decision is not only erroneous, but, in my view, it sends a very wrong message, both to the bar and to the public whose interests the Code is supposed to protect. To the members of the bar, it says, you will not be held to the ethical standards of the Code, as long as you are fortunate enough that your misconduct does not happen to cause serious harm. To the public, the decision can only add to its concerns as to whether the profession is capable of policing its own members. I respectfully dissent.

DR 1-102(A) provides that "A lawyer shall not: . . . (4) Engage in conduct involving . . . deceit or misrepresentation." (Internal punctuation omitted.) Signing a legally significant document with someone else's name knowing that the other has not given authorization to do so is (a) a misrepresentation of the genuineness of the signature and/or of one's authority to execute the document and is, therefore (b) a deceitful act against anyone relying on the genuineness/authority of the signature.

While it is easy to imagine much more serious cases of deceit and misrepresentation than this, there can hardly be a plainer one. Thus, unless the appellee is to be excused because he merely procured the act through giving advice to his client, as opposed to forging the signature himself, he unquestionably violated the Code. The majority does not excuse his conduct on this ground, and a moment's reflection on the concepts of agency, causation and conspiracy will confirm why it has not.

It is true that the appellee's conduct resulted in his client achieving a result to which she was apparently entitled. That is a consideration that should go to the severity of the sanction, however, not to the conclusion as to whether a violation occurred in the first place. I think the hearing panel was well within its discretion in deciding that, under the circumstances, the minimum sanction was warranted. I cannot agree with the Board, however, which adopted the hearing panel's findings of fact in their entirety, that no violation occurred. See *In re Morrissette*, 161 Vt. 576, 579, 636 A.2d 329, 332 (1993) (mem.)

(attorney violated DR 1-102(A)(4) by altering release of right of first refusal after clients had signed it); *In re Conti*, 380 A.2d 691, 692 (N.J. 1977) (attorney violated DR 1-102(A)(4) by signing clients' names to deeds and acknowledging signatures despite permission to do so); see also *State ex rel. Nebraska State Bar Ass'n v. Kelly*, 374 N.W.2d 833, 837 (Neb. 1985) (forging client's endorsement on bond receipt violates DR 1-102(A)(4) despite attorney's belief that conduct was "ministerial in nature and done as a service to his client").

The concurrence characterizes this issue as a question of standard of review. It is not. Where the Board ought to be entitled deference, akin to a jury, is in its fact finding role. The issue before us, however, is whether appellee's conduct, as determined by the Board, amounts to a violation of DR 1-102(A)(4). This issue is most plainly a question of law; the Board's legal conclusions must be "'clearly and reasonably supported by the evidence.'" *In re Rosenfeld*, 157 Vt. 537, 543, 601 A.2d 972, 975 (1991) (quoting *In re Wright*, 131 Vt. 473, 490, 310 A.2d 1, 10 (1973)). Indeed, under these facts, the Board's conclusion that no violation occurred was clearly erroneous. The Board has the opportunity to temper "violations of the Code with a collective view of fairness" when it recommends sanctions. It may not impose its view of fairness in deciding whether a violation occurred at all.

I would reverse the decision of the Board and issue a public reprimand. I am authorized to state that Justice Dooley joins in this dissent.