### In re Deborah Bucknam

[628 A.2d 932]

No. 92-134

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 18, 1993

*Wendy S. Collins*, Special Bar Counsel, Montpelier, for Plaintiff-Appellee.

*Edwin H. Amidon, Jr.* of *Roesler, Whittlesey, Meekins and Amidon*, Burlington, for Defendant-Appellant.

**Per Curiam.** The Professional Conduct Board concluded that respondent-attorney Deborah Bucknam violated several provisions of the Code of Professional Responsibility in dealing with a client and his wife over a six-month period in 1989. The Board recommended that respondent be suspended from the practice of law for a period of thirty days and that she be placed on probation for a period of one year under the following conditions: that she successfully complete the multi-state professional responsibility exam, that she forego the collection of any expenses from complainants, and that she not be found to have committed similar ethical violations. On appeal, respondent challenges three of the six violations found by the hearing panel and adopted by the Board. She argues that the remaining three

violations warrant only an admonition with no probationary period. We conclude that a public reprimand is a more appropriate sanction than a one-month suspension, given the facts of this case. In all other respects, we adopt the Board's recommended sanctions.

I.

In January 1987, respondent agreed to represent complainants on a contingency basis regarding a workers' compensation claim and a tort suit against the husband's former employer, the Goss Tire Company. The husband signed a retainer agreement. After filing a workers' compensation claim against Goss Tire, respondent persuaded complainants that it was also necessary to file a workers' compensation claim against Asplundh Tree Company, a subsequent employer that had also denied a claim for benefits by the husband, and to add Asplundh as a defendant in the tort suit to be filed against Goss Tire. In November 1987, respondent filed a workers' compensation claim against Asplundh and, two months later, a civil suit against both Asplundh and Goss Tire.

In early 1988, respondent settled the Goss Tire workers' compensation case for $1008. She retained 20% for her legal services and remitted the balance to complainants without retaining any money to cover her expenses. In July 1988, respondent sent complainants a bill for expenses, totaling $580. Complainants did not pay the bill, and neither respondent nor complainants discussed the bill again.

In December 1988, Goss Tire filed a motion for summary judgment in the civil suit on the ground that workers' compensation was the husband's exclusive remedy. Within a month, Asplundh filed a motion to dismiss on the same ground.

About that time, the husband contacted another lawyer because he was frustrated by what he perceived to be respondent's failure to keep him informed of progress with the lawsuits. The lawyer suggested he resolve the problem with respondent. In early February, complainants met with respondent and, among other things, mentioned that they had contacted another lawyer because of their frustration over the lack of progress in their cases. Angered by complainants' lack of gratitude for her work on the cases, respondent suggested that they retain an-

other lawyer if they were not happy with her services. Complainants stated that they did not want to retain another lawyer because it would mean a great deal of lost time and effort.

A few days after this meeting, on February 6, the superior court dismissed the civil suit against Asplundh without prejudice to refile after resolution of the Asplundh workers' compensation claim. On March 6, respondent wrote a letter to complainants informing them of the dismissal. In that letter, she stated that a fee agreement had never been reached regarding the Asplundh claim, that she would continue to represent them only on an hourly basis, that she charged $80 per hour and required a $750 retainer, and that she would presume they did not want her to represent them if she did not receive the retainer and a signed agreement by March 15. Complainants immediately called respondent and told her they had understood that the actions against both Goss Tire and Asplundh would be handled on a contingency basis. Respondent disagreed. Because respondent was unwilling to represent complainants in the Asplundh claim on a contingency basis, complainants agreed to allow respondent to withdraw from the pending cases.

Complainants then contacted the lawyer to whom they had previously spoken. In turn, the lawyer contacted respondent, who said she wanted to withdraw from all of the remaining matters involving complainants, but would not release the case files until complainants reimbursed her for out-of-pocket expenses, which amounted to $498. On April 3, respondent mailed a letter to complainants, with a copy to the lawyer, confirming her agreement with complainants to withdraw, stating that she would not release the files unless complainants paid her expenses, and warning complainants that they would be responsible for the entire amount of her attorney's fees unless the expenses were paid within fifteen days. Respondent also sent complainants a statement itemizing the expenses. The wife called respondent to challenge the accuracy of the statement and to obtain copies of the underlying bills, but respondent neither returned the calls nor supplied the requested information.

On April 12, the lawyer with whom complainants had been consulting entered his appearance in the Asplundh workers' compensation claim. That same day, he wrote respondent, stat-

ing that complainants had not agreed to be responsible for her fees in the event they could not pay her expenses within fifteen days, and that he believed the canons of ethics required her either to continue zealous representation of complainants in the Goss Tire civil suit or to allow complainants access to the files, regardless of whether expenses were paid, so that they could secure other representation. Respondent was incensed by the letter, which she considered patronizing and sexist.

On April 17, the superior court granted summary judgment to the employer in the Goss Tire civil case at a hearing attended by respondent. Complainants' new attorney learned of the order on April 25 and suggested that complainants call respondent and ask her if anything had happened in the case. The next day, when the wife inquired about the status of the case, respondent told her that the court had not yet issued a decision. Respondent first informed complainants of the court's order at a meeting on April 29.

At that meeting, complainants stated that they wanted respondent to appeal the order. Respondent agreed to do so if complainants paid the filing fee, the cost of a transcript, and $100 per month towards expenses. Although complainants did not believe they could make the payments, they agreed to do so. Respondent filed the appeal, but complainants failed to make payments as agreed. On June 21, respondent wrote complainants that she would seek to withdraw from the case if they did not pay her $100 within five days. When complainants did not respond to her letter, respondent filed a motion to withdraw in early July on the ground that complainants had "failed to abide by the retainer agreement." When complainants sought to obtain a copy of the retainer agreement, respondent told her office manager not to give them one.

On July 26, complainants filed a letter opposing respondent's motion to withdraw. The letter stated that complainants were not in violation of the retainer agreement and that respondent had failed to provide them with bills supporting her accounting of expenses even though they had asked for such proof three times. Complainants' letter angered respondent because she believed that her office manager had sent them copies of the bills, although she did not verify whether this had been done. In fact, in late June or early July, respondent's staff had compiled

a list of expenses, totaling $809, incurred on behalf of complainants, along with copies of checks and invoices substantiating the charges; however, complainants did not receive this accounting until after it was sent to bar counsel in connection with the present disciplinary action.

On August 1, complainants' new attorney asked respondent to state (1) her conditions for releasing the file of the Goss Tire civil suit, and (2) her expectations for future payments in the event she was permitted to withdraw and complainants prevailed on appeal. Respondent stated that she would turn over the file under the following conditions: (1) "All costs which have been expended on [complainants'] behalf will be paid," and (2) "[w]e will expect to receive 1/3 of whatever fees you receive in the event this matter is successfully appealed."

On August 10, respondent's motion to withdraw was granted. At the hearing on the motion, the husband stated, among other things, that respondent had yelled at him and failed to provide him with a complete accounting of the expenses, and that he was unable to pay the expenses. Acting on this Court's order, respondent sent a copy of the retainer agreement to complainants' new attorney. She also sent him a letter stating that because the husband had made false allegations to the Vermont Supreme Court, she would now release the file only under the following conditions: complainants pay either $800 in expenses plus her full fee should the appeal prove successful, or an estimated $2200 based on the number of hours billed on the case. Complainants made no payments to respondent, and complainants' new attorney would not take over the appeal without reviewing medical evidence in the file held by respondent. On November 20, 1989, the Goss Tire appeal was dismissed because complainants failed to comply with an entry order requiring the filing of a printed case and brief.

Based on this sequence of events, the hearing panel found that respondent had violated ethical rules by:

(1) lying about the status of the Goss Tire civil suit, in violation of DR 1-102(A)(4) (dishonesty, fraud, deceit, or misrepresentation);

(2) attempting to unilaterally alter the Asplundh fee agreement, in violation of DR 1-102(A)(4) and (5) (conduct prejudicial to administration of justice) and DR 7-101(A)(3) (damaging client during course of professional relationship);

(3) wrongfully demanding reimbursement of expenses before the conclusion of the case, in violation of DR 1-102(A)(4) and (5), and 7-101(A)(3);

(4) negligently failing to provide an expense accounting, in violation of DR 1-102(A)(7) (conduct adversely reflecting on lawyer's fitness to practice law);

(5) falsely asserting an oral agreement between herself and her clients, in violation of DR 1-102(A)(4) and DR 1-102(A)(7); and

(6) failing to release a file to the detriment of her clients, in violation of DR 1-102(A)(4) and (7), DR 7-101(A)(3), and DR 2-110(A)(2) (lawyer shall not withdraw without taking reasonable steps to avoid prejudicing client, including delivering all papers to which client is entitled).

The majority of the three-member panel recommended that respondent be suspended from the practice of law for thirty days followed by a period of probation to last until she successfully completed the multi-state professional responsibility examination. The majority also recommended that respondent be required to reimburse complainants for fees retained that exceeded any judgment she collected based on expenses owed by complainants. In a minority opinion, the panel chair recommended that respondent be publicly reprimanded rather than suspended. After noting various mitigating and aggravating circumstances, the Professional Conduct Board adopted the sanctions recommended by the panel majority, with certain clarifications regarding reimbursement to complainants.

## II.

Respondent concedes that she misrepresented the status of the Goss Tire civil suit to complainants, attempted to unilaterally alter the implied-in-fact agreement in the Asplundh workers' compensation matter, and negligently failed to provide complainants with cancelled checks for out-of-pocket expenses. She also concedes that she handled the fee dispute with complainants poorly. Nevertheless, she contends that, given the mitigating factors and the absence of prejudice to complainants resulting from these three violations, the appropriate sanction is admonition without a period of probation.

## A.

■ Respondent argues that two of the violations found by the Board are unsupported by the record. First, she contends that the evidence does not support the Board's conclusion that she falsely asserted an agreement by complainants to pay expenses within fifteen days. We agree.

The disputed March 22, 1989 letter reads as follows:

This is to confirm our agreement that I am withdrawing from the case of *Favreau vs. Goss, et al.* I will give you your file when I receive my out-of-pocket expenses, which amount to $498.00.

By this agreement, you are not responsible for any other attorney's fees. As I indicated to you over the telephone, this is more than fair to you since we spent many hours on your case.

Therefore, if I do not receive money for the expenses within 15 days, you will be responsible for the entire amount of my attorney's fees.

On its face, the letter confirms only that there was an agreement that respondent would withdraw from the case. Rather than asserting an oral agreement that complainants would be liable for attorney's fees, the third paragraph of the letter is, at worst, a threat to charge complainants for her fees unless they paid her out-of-pocket expenses within fifteen days. Respondent may not have had a right to demand attorney's fees in the event of nonpayment of expenses, but that fact does not transform the third paragraph into a false assertion of an agreement. The Board's finding of a violation is not "'clearly and reasonably supported by the evidence.'" *In re Rosenfeld*, 157 Vt. 537, 543, 601 A.2d 972, 975 (1991) (quoting *In re Wright*, 131 Vt. 473, 490, 310 A.2d 1, 10 (1973)).

■ Second, respondent argues that the evidence does not support the Board's conclusion that she wrongfully demanded reimbursement of expenses. In support of this argument, she points out that (1) from the outset, complainants wanted to pay for expenses on a monthly basis, and (2) the Board itself had found the fee agreement to be unclear as to whether it required reimbursement for expenses at the time they were incurred or

at the conclusion of the matter. While we agree that the retainer agreement was ambiguous, and that complainants expressed a desire to pay for expenses as they came up, the Board's finding of a violation is supported by the evidence.

In relevant part, the retainer agreement read as follows:

> If we are successful, I will receive as a fee a percentage of the gross recovery. This percentage will be as follows: 25 percent of any recovery of a Workman's Compensation claim; 33 1/3 percent of any other claim up to jury verdict; 40 percent if the case is appealed.
>
> You will pay all costs and expenses of prosecution of the claim . . . . I may advance these costs and expenses, and in that case, I will deduct them from any recovery in addition to my percentage of the gross amount. . . .
>
> . . . .
>
> I shall be entitled to the percentage fee we have agreed on from any recovery, even though you may have dismissed me or substituted another attorney in my place before obtaining such recovery.
>
> I shall have an attorney's lien on any recovery pursuant to this agreement.

The agreement does not spell out when complainants must pay expenses. It does indicate, however, that costs and expenses would be deducted from any recovery if respondent decided to advance them to complainants. Despite complainants' request for monthly billing of expenses so that they would not have to pay a large sum at one time, respondent did not send complainants any bill for expenses until approximately eighteen months after she took the case. Complainants ignored that $580 bill, and respondent made no attempt to collect it or any other expenses until nearly a year later when she decided she no longer wanted to represent complainants. Given the language of the retainer agreement, which was drafted by respondent, her actions implied an agreement that she would advance the costs and expenses of the case until the matter was concluded.

In any event, respondent's demand for reimbursement was wrongful because she made the demand while refusing to provide complainants with a copy of the retainer agreement and while negligently failing to provide them with a detailed ac-

counting of her expenses. Further, because her demand for re-imbursement of expenses was wrongful, respondent cannot argue that the expenses were properly due after complainants, under pressure from her, agreed to pay $100 per month toward expenses. The evidence supports the Board's finding of a violation.

### B.

Respondent also contends that the panel abandoned its finding of a violation regarding the retaining lien, and that, even if it did not, the record does not support such a finding. We cannot agree with either contention. In its original findings and conclusions, the hearing panel found no violation for withholding the file "in and of itself," but stated that respondent could not claim an attorney's lien as a defense to the other alleged disciplinary violations. In its second decision regarding sanctions, the hearing panel stated that respondent "intentionally prejudiced or damaged her clients . . . by insisting on fees to which she was not entitled and by improperly withholding her clients' file." The panel then discussed the wrongful retention of the file within its discussion of respondent's wrongful demand for expenses. In short, the panel enfolded the retaining-lien violation into the wrongful-demand-for-expenses violation. The panel concluded that respondent's retention of the files was wrongful because her demand for expenses was wrongful. The Board adopted this conclusion.

We agree that the respondent's imposition of a retaining lien was inappropriate because her demand for reimbursement of expenses was wrongful, given her unilateral attempt to change the fee arrangement, her refusal to provide complainants with a copy of the retainer agreement, and her failure to provide complainants with support for her accounting of out-of-pocket expenses. See *Lucky-Goldstar v. International Mfg. Sales Co.*, 636 F. Supp. 1059, 1064 (N.D. Ill. 1986) (attorney who fails to assure agreement as to amount or method of calculating fee should forego lien); *Miller v. Paul*, 615 P.2d 615, 620 (Alaska 1980) (if client does not initiate lawyer's withdrawal, or if discharge of lawyer is due to unethical conduct, files should not be

withheld).* Accordingly, apart from determining the appropriate sanction, we need not address respondent's argument that complainants were not entitled to the file because they had the ability to pay the expenses and because all of the relevant materials contained in the file were available to complainants in the file at the Vermont Supreme Court.

## C.

Finally, respondent argues that the sanction recommended by the Board is too severe given the circumstances of this case and the mitigating factors present. We adopt the Board's recommendation of sanctions, except for the one-month suspension.

While they are not controlling, the American Bar Association Standards For Imposing Lawyer Sanctions [hereinafter ABA Standards] provide guidance for determining the appropriate sanction. *In re Rosenfeld*, 157 Vt. at 546, 601 A.2d at 977. We have already accepted the ABA's recommendation that a suspension should be for a period of at least six months. *Id.* at 547, 601 A.2d at 978. The reasoning is that a minimum of six months is needed to ensure effective rehabilitation and thus protect the public. *Id.*; ABA Standard 2.3, Commentary. Further, short-term suspensions function primarily as a fine, which

---

* While both the common law and the Code of Professional Responsibility recognize the attorney's lien, the courts have narrowly circumscribed use of the lien. E.g., *Academy of California Optometrists, Inc. v. Superior Court*, 124 Cal. Rptr. 668, 672 (Ct. App. 1975) (lien is void where subject matter of lien is of no economic value and lien is used solely to extort disputed fees from client); *Marsh, Day & Calhoun v. Solomon*, 529 A.2d 702, 706 (Conn. 1987) (self-executing attorney's retaining lien is not absolute right but merely method for attorney to protect "proper fee"; it should not be used when attorney withdraws voluntarily or is discharged because of negligence or misconduct); Vermont Bar Association, Ethics Opinion No. 82-9 (1982) (retaining lien not proper if it reasonably appears that withholding file might prejudice client's interest in subject matter of file or adversely affect speedy administration of justice); see generally ABA Standing Comm. on Ethics and Professional Responsibility, Informal Op. 1461 (1980) (providing guidelines for attorneys to determine whether retaining lien can properly be invoked); Annotation, *Attorney's Assertion of Retaining Lien as Violation of Ethical Code or Rules Governing Professional Conduct*, 69 A.L.R.4th 974 (1989) (compiling cases addressing circumstances under which retaining lien is appropriate).

is not a recommended sanction. ABA Standard 2.3, Commentary. We find nothing exceptional about this case that persuades us to disregard this policy. Therefore, we must determine whether respondent's conduct warrants a six-month suspension.

We conclude that it does not. In determining the appropriate sanction, we consider the duties violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and any aggravating or mitigating factors. *In re Rosenfeld*, 157 Vt. at 546, 601 A.2d at 977. As the majority of the hearing panel stated in summarizing its recommendation on sanctions, respondent never intended to cheat or gouge her clients. Indeed, there is no suggestion that she provided inadequate representation or that she overcharged for her services. Rather, believing that her clients were cheating her, she overreacted and used improper means to bully them into paying. When her clients challenged her right to the disputed expenses, she used her position as their attorney to punish them. While these violations are serious, they do not require a suspension to protect the public.

As mitigating factors, the Board cited the absence of prior ethical violations, the institution of new office procedures for explaining retainer agreements and for itemized billing, and the substantial amount of pro bono work done by respondent in the past. As aggravating factors, the Board cited the pattern of misconduct involving multiple offenses, respondent's dishonest and selfish motive, her refusal to acknowledge the wrongful nature of her conduct, the vulnerability of the clients, and her substantial experience as a lawyer. Moreover, the majority opinion of the panel, which was adopted by the Board, emphasized that the complainants' civil suit was dismissed by this Court as the result of respondent's misconduct.

While we acknowledge the mitigating factors, we are less persuaded by the aggravating factors. First, although there were multiple offenses, they were restricted to one client-couple that respondent believed was cheating her. No pattern of misconduct has been shown. Second, while respondent was somewhat defiant regarding the extent of her culpability, she acknowledged some wrongdoing. Third, although complainants were relatively unsophisticated, they did have access to the ad-

vice of another lawyer throughout the time the violations occurred. Finally, while the dismissed appeal would most likely have been heard by this Court if respondent had acted properly and remained as complainants' counsel, it is unclear why the unavailability of complainants' file prevented them from obtaining another attorney to brief the appeal. All of the documents that constituted the entire record on appeal were available in this Court's file. Other than a vague reference to medical records, there is no explanation of why the appeal could not have been briefed based on the documents in that file. Thus, the extent of actual or potential prejudice is questionable.

Based on these considerations and the fact that a one-month suspension is generally ineffective and inappropriate, we agree with the minority opinion of the hearing panel, which recommends public censure rather than a one-month suspension. We reject, however, respondent's contention that her misconduct warrants only an admonition. Admonition is appropriate "[o]nly in cases of minor misconduct, when there is little or no injury to a client, the public, the legal system, or the profession, and when there is little likelihood of repetition by the lawyer, should private discipline be imposed." ABA Standard 1.2. Here, in view of the number of violations and respondent's begrudging acknowledgment of wrongdoing, public censure is necessary not only to inform the public but also to put respondent, and the bar in general, on notice that this type of overbearing conduct toward clients is unacceptable. Further, the same considerations warrant a one-year probationary period, with conditions recommended by the Board.

Respondent has acknowledged that she misrepresented the status of a case to complainants, attempted to alter an implied fee agreement, and negligently failed to supply a detailed accounting of expenses. She also acted vindictively toward complainants by refusing to provide them with a retainer agreement, by revising her offer to successor counsel concerning sharing any potential recovery, and by retaining their file to pressure them into paying expenses that were legitimately in dispute. Respondent's misrepresentation alone could warrant a public reprimand. See In re Welts' Case, 620 A.2d 1017, 1019–20 (N.H. 1993) (lawyer publicly censured based on isolated course

of conduct in which he misrepresented the status of litigation to clients). Combined with other incidents of misconduct against complainants, a public reprimand is appropriate and necessary.

*Respondent is publicly reprimanded for the violations found in this opinion. She shall forego collecting expenses allegedly due her from complainants. From the date of issuance of this opinion, she shall be on probation for a period of one year, during which time she shall successfully complete the multistate professional responsibility examination and shall not be found to have committed similar ethical violations.*