2008 VT 31

**In re Robert FARRAR, ESQ.**

[949 A.2d 438]

No. 07-212

¶ 1. March 12, 2008. A Hearing Panel of the Professional Responsibility Board found that respondent, Robert Farrar, violated Vermont Rule of Professional Conduct 1.15 by commingling his funds with client funds in his client trust account, and recommended that he be privately admonished and placed on probation. We accepted respondent's case for review. We adopt the Hearing Panel's conclusion that respondent violated Rule 1.15, but conclude that respondent's actions warrant a public reprimand.

¶ 2. The stipulated facts are as follows. Respondent was admitted to the Vermont bar in 1972 and has been a solo practitioner

for the past thirteen years. He has one employee who is both his secretary and his bookkeeper. In October 2005, respondent received and completed a survey from the Professional Responsibility Program on client trust account management. Respondent answered affirmatively to the question, "Have you deposited any non-client funds in any trust accounts? If so, please explain." In explanation, respondent wrote: "For a while, I would put $200/week in trust and draw it out. That practice was discontinued."

¶ 3. A disciplinary investigation followed. Respondent made a full and free disclosure of his actions, and cooperated fully with the investigation. Respondent explained that in 2000 his bookkeeper began transferring money each month from the firm's business account to the client trust account and then back to the business account to ensure that there would be sufficient funds in the business account each month to meet the firm's payroll obligations. The bookkeeper did this from 2000 to 2005. In addition, from September 2001 to April 2005, the bookkeeper would regularly transfer $200 from the firm business account to the client trust account as a type of savings for respondent. The bookkeeper reconciled the trust account on a monthly basis and at no time was respondent's money used to counteract a deficit in the client trust account. Respondent had no selfish or dishonest motive for commingling his money with his clients' property. Respondent stipulated to a statement of facts and to violation of Rule 1.15, which directs lawyers to hold client property "separate from the lawyer's own property." V.R.Pr.C. 1.15(a). Respondent and disciplinary counsel did not agree on an appropriate sanction. Disciplinary counsel recommended that respondent receive a public reprimand. Respondent requested that the Hearing Panel privately admonish him and place him on probation. As a condition of probation, respond-

ent offered to write an article for the Vermont Bar Journal on proper trust account management and the potential dangers of commingling funds.

¶ 4. The Hearing Panel accepted respondent's stipulation that he violated Rule 1.15(a) and held a hearing to determine the appropriate sanction. The Panel concluded that in general violation of Rule 1.15 should result in suspension, but that suspension was not appropriate in this case, in light of the mitigating factors. The Panel considered the following mitigating factors: (1) respondent answered the questionnaire truthfully and completely; (2) respondent had no dishonest or selfish motive; and (3) respondent cooperated fully with the investigation. Thus, the Board privately admonished respondent and placed him on probation with the condition that he write an article on proper trust account management for small and solo practitioners to be submitted to the Vermont Bar Journal. The Panel explained that this condition of probation would aid in educating the bar about the dangers of commingling personal and client funds. We accepted review of the Hearing Panel's decision on our own motion.

¶ 5. On review, we will uphold the Panel's findings unless they are clearly erroneous. *In re Pressly*, 160 Vt. 319, 322, 628 A.2d 927, 929 (1993). Imposition of a sanction, however, is a matter left to this Court's discretion. "This Court makes its own determination as to which sanctions are appropriate, but we nevertheless give deference to the recommendation of the Hearing Panel." *In re Blais*, 174 Vt. 628, 630, 817 A.2d 1266, 1269 (2002) (mem.).

¶ 6. We agree with the Panel that respondent violated Rule 1.15 by depositing his own funds in his client trust account. We disagree with the Panel's recommended sanction, however, and publicly reprimand respondent.

¶ 7. Respondent contends that his misconduct warrants only a private admoni-

tion because there was no potential for injury to his clients, he cooperated fully with the investigation and he acted without any dishonest motive. We recognize the mitigating circumstances in this case, but conclude that a private admonition is not appropriate given the nature of respondent's offense. Private reproval should be used only "in cases of minor misconduct, when there is little or no injury to a client, the public, the legal system, or the profession, and when there is little likelihood of repetition by the lawyer." A.O. 9, Rule 8(A)(5)(b). We are confident that respondent is not likely to repeat his misconduct, but we cannot characterize respondent's acts as minor. See *In re Anderson*, 171 Vt. 632, 635, 769 A.2d 1282, 1285 (2000) (mem.) (adopting the Board's recommended sanction of a public reprimand for an attorney who took too long to report the mishandling of client trust accounts by a partner because the misconduct was not minor). As we have explained in the past, "protecting client property is a fundamental principle." *Id.* Commingling personal property with client property is a serious offense because of the likely negative consequences that may result to an attorney's clients. As another court explained: "The rule against commingling has three principal objectives: to preserve the identity of client funds, to eliminate the risk that client funds might be taken by the attorney's creditors, and, most importantly, to prevent lawyers from misusing/misappropriating client funds, whether intentionally or inadvertently." *In re Rivlin*, 856 A.2d 1086, 1095 (D.C. 2004).

¶ 8. In addition, we are not persuaded by respondent's contention that there was no potential for injury to his clients because his secretary reconciled the accounts monthly and because he had no dishonest motive.[1] Respondent's practice

of regularly placing his own money in his client trust account put his client's funds at risk, even if he never intended to misappropriate those funds. There was potential for injury to respondent's clients because respondent might have inadvertently used client funds or client funds could have been attached by respondent's creditors. See *In re Anderson*, 171 Vt. at 635, 769 A.2d at 1285 (noting that there was potential for injury where a partner failed to promptly report another partner's trust account irregularities); see also *In re Nawrath*, 170 Vt. 577, 581-82, 749 A.2d 11, 15 (2000) (mem.) (explaining that there was potential for injury where an attorney negligently failed to file a mortgage). In addition to the potential pecuniary harm to respondent's clients, "lawyer misconduct in handling and protecting client trust accounts does injure both the public at large and the profession by increasing public suspicion and distrust of lawyers." *In re Anderson*, 171 Vt. at 635, 769 A.2d at 1285.

¶ 9. Respondent also argues that any sanction greater than private admonition would be unnecessarily severe given his lack of dishonest intent and full cooperation, and would discourage other attorneys from reporting their own misconduct and cooperating with disciplinary proceedings. Indeed, although the Hearing Panel found that respondent's commingling was serious, the Panel also considered "the importance of truthfulness and cooperation in dealing with Disciplinary Counsel," and thus recommended a private admonition. We are not convinced that the goal of encouraging attorneys to

___

[1] Respondent attempts to distinguish his case from other instances where we have sanctioned attorneys with a public reprimand primarily based on respondent's conclusion that his conduct did not potentially damage any client. The Hearing Panel found that respondent's practice of placing his funds in his client trust account had the potential to harm his clients, and, as discussed, we agree.

be truthful and cooperative with disciplinary counsel inquiries overrides the seriousness of the offense and the public interest in deterrence.[2] Respondent's honesty can be fairly recognized as mitigating against harsher corrective measures, such as suspension.

¶ 10. Furthermore, while recognizing that respondent did not act selfishly, we will not minimize his infraction merely because he was unaware that his acts violated the rules of professional conduct. "If a failure to understand the most central Rules of Professional Conduct could be an acceptable defense for a charged violation, even in cases of good faith mistake, the public's confidence in the bar, and more importantly, the public's protection against lawyer overreaching would diminish considerably." *In re Smith*, 817 A.2d 196, 202 (D.C. 2003). The prohibition against lawyers commingling private monies with client funds is a fundamental precept. "[M]istake about the applicability of an ethical rule cannot excuse or even mitigate misconduct when the lawyer has violated a rule fundamental to governance of the legal profession." *Id.*

¶ 11. Having concluded that a private admonition is not appropriate, we consider the appropriate sanction for respondent's actions. "In determining the appropriate sanction, we consider the duties violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and any aggravating or mitigating factors." *In re Bucknam*, 160 Vt. 355, 366, 628 A.2d 932, 938 (1993); see American Bar Association,

Standards for Imposing Lawyer Discipline § 3.0 (1986) (amended 1992) (listing factors to be considered in imposing sanctions), available at http://www.abanet.org/cpr/regulation/standards_sanctions.pdf [hereinafter ABA Standards]. As explained, respondent's practice of putting his own money in his client trust account violated his duty to his clients to preserve their property. Respondent had full knowledge of his bookkeeper's regular practice of putting nonclient funds into his client trust account, and respondent continued this practice for many years. Respondent should have known that his handling of his trust account was in violation of his professional responsibilities. As explained, respondent's actions did not actually harm his clients, but there was the potential for injury. Under these circumstances, we agree with the Hearing Panel's determination that the presumptive sanction in this case is suspension. See ABA Standards § 4.12 ("Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes . . . potential injury to a client.").

¶ 12. Next, we consider the aggravating and mitigating circumstances. We concur with the Hearing Panel's conclusion that several factors mitigate against suspending respondent, including respondent's lack of a dishonest motive, respondent's full and free disclosure to disciplinary counsel, and respondent's remorse. See ABA Standards § 9.32 (listing mitigating factors). There are also relevant aggravating factors that the Hearing Panel did not address. As stipulated in the facts, respondent's misconduct was ongoing for several years and respondent is an experienced attorney. See ABA Standards § 9.22 (listing potential aggravating factors including "substantial experience in the practice of law"). On balance, we conclude that the mitigating factors outweigh the aggravating factors, and that a

---

[2] In any event, attorneys are independently obligated under the rules to honestly answer questions from the Office of Disciplinary Counsel and to cooperate with disciplinary proceedings. See V.R.Pr.C. 8.1, 8.4(d) (requiring attorneys to provide information to disciplinary counsel).

public reprimand is the appropriate sanction in this case.

*Robert Farrar is publicly reprimanded for violation of Rule 1.15 of the Vermont Rules of Professional Conduct for regularly depositing nonclient funds in his client trust account.*