2015 VT 57











In re PRB Docket No. 2012-155
(2014-082)

 

2015 VT 57

 

[Filed 03-Apr-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40
as well as formal revision before publication in the Vermont Reports. 
Readers are requested to notify the Reporter of Decisions by email at:
JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State
Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections
may be made before this opinion goes to press.

 

 


 
 
 2015 VT 57
 
 


 


 
 
 No. 2014-082
 
 


 


 
 
 In re PRB Docket No. 2012-155
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 Original Jurisdiction
  
 
 
 
 
      
 
 
 Professional Responsibility
 Board
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 September Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Jean
 Brewster Giddings, Chair
 
 
 
 
  
 
 


Beth DeBernardi, Disciplinary
Counsel, Burlington, for Petitioner-Appellant.

 

P. Scott McGee, Norwich, for Respondent-Appellee.

 

 

PRESENT:   Reiber, C.J.,
Dooley, Skoglund and Robinson, JJ.,
and Durkin, Supr. J., 

                    
Specially Assigned

 

 

¶ 1.            
PER CURIAM.   Office of
Disciplinary Counsel appeals the determination of the Hearing Panel of the
Professional Responsibility Board that attorney should receive a private
admonition sanction for violating Vermont Rule of Professional Conduct 1.15 by
commingling personal and client funds in his client trust account.  We
affirm.

¶ 2.            
The parties stipulated to the following facts.  Attorney was
admitted to the Vermont bar in 1983.  He worked as a solo practitioner and
independent contractor until 1986, at which time he signed on as an associate
with another law firm.  In 1997, he again established his own private
practice.  At that time, he opened an Interest on Lawyer Trust Account
(IOLTA), which he presently still maintains.  Attorney uses this client
trust account for real estate transactions and in connection with his estate
and disability work.  Attorney employs secretaries, social workers,
paralegals, and associates, and he contracts with an independent bookkeeping
service.

¶ 3.            
In 2011, attorney randomly was selected to complete an IOLTA account
survey.  While responding to the survey, he realized that he had been
violating the rules by using his IOLTA account to escrow funds that were not directly
client related.  Attorney retained an independent certified public
accountant (CPA) who reviewed all his IOLTA account transactions going back to
1997 to identify any other irregularities.  The CPA’s review was
“comprehensive and exhaustive” and included review of “all deposits and
withdrawals and all transactions.”  He concluded that all of the client
funds were accounted for.  After review, attorney self-reported all
violations to Disciplinary Counsel.  In addition to retaining a CPA,
attorney retained the assistance of legal counsel.  He also purchased bank
records and probate court records to confirm information that had been lost in
a flood.

¶ 4.            
Attorney reported three categories of IOLTA violations.  First,
attorney commingled personal and client funds by creating subaccounts within
his IOLTA trust account in which he deposited personal funds.  Attorney
deposited these funds in escrow to be used later to pay liabilities owed to
third parties, but the funds were labeled as attorney’s personal funds while in
the account.  The funds were deposited separately into easily identifiable
IOLTA subaccounts, and attorney maintained a separate ledger to ensure that he
would not confuse the client and personal funds.  Attorney discontinued
these accounts once he realized their use was improper.

¶ 5.            
With respect to commingling personal and client funds, the parties
stipulated that attorney’s mental state was one of negligence; he did not
knowingly or intentionally violate the rules.  He mistakenly believed that
creating separate escrow accounts was permitted, if not required, under the
rules, as long as the accounts were segregated and labeled for specific
purposes.  His conduct resulted in no actual injury to his clients.

¶ 6.            
Second, bookkeeping errors resulted in funds being overdrawn from
several of the IOLTA subaccounts.  Attorney attributed these errors to his
or his bookkeeper’s failure to enter the correct inclusive date when issuing a
check to close out an account.  This resulted in higher balances than
actually existed.  As soon as each error was discovered, the bookkeeper
deposited funds sufficient to bring the accounts in good standing.  No
overdraft notices were ever issued.

¶ 7.            
With respect to the overdrawn subaccounts, the parties stipulated that
attorney’s mental state was one of negligence.  The errors were due to
poor bookkeeping and inadequate oversight practices.  His conduct resulted
in no actual injury but had the potential to cause injury because some client
funds were used to cover the negative balances.

¶ 8.            
Third, residual funds remained in several client subaccounts when
matters were closed by other associates or when associates left the firm. 
Most of these funds were fees payable to attorney or funds earmarked for bank
charges that never were debited from the subaccount.  Some of these funds
were payable to clients or third parties.  Attorney since has closed the
dormant accounts by making the necessary payments.  Attorney has, with the
assistance of his CPA, established additional checks and reconciliation
protocols to avoid future errors.

¶ 9.            
With respect to surpluses in subaccounts, the parties stipulated that
attorney’s mental state was one of negligence.  Again, these were errors
due to poor bookkeeping and inadequate oversight practices.  A small
number of clients suffered minor injury due to the delay in receiving these
funds.

¶ 10.         Attorney
appeared before the hearing panel.  After considering the parties’
stipulations and arguments, the panel ordered that attorney be privately
admonished for violating Rule 1.15(a)(1) by
commingling personal and client funds; Rule 1.15(b) by depositing his own money
in excess of that required for bank fees; and Rule 1.15(f)(2) by using money
held in trust for one client to carry out business for another client without
that client’s permission.  The hearing panel considered attorney’s mental
state of negligence in concluding that public reprimand was the presumptive sanction,
but reduced the sanction to private admonition based on several mitigating
factors, including attorney’s good standing, good faith effort to cure
violations, full disclosure and cooperative attitude, and remorse. 
Disciplinary Counsel filed this appeal.

¶ 11.         We
uphold the hearing panel’s findings of fact and mixed conclusions of law and
fact if they are “clearly and reasonably supported by the evidence” and not
clearly erroneous.  In re Neisner, 2010
VT 102, ¶ 12, 189 Vt. 145, 16 A.3d 587 (quotation omitted).  Although
we grant deference to the panel’s recommendations on sanctions, we ultimately
determine the appropriate disciplinary measure.  Id.

¶ 12.         The
sole issue on appeal is whether private admonition is the appropriate sanction
for attorney’s misconduct.  Disciplinary Counsel contends that suspension
is the presumptive sanction and that the mitigating factors should reduce the
sanction from suspension to public reprimand.  Disciplinary Counsel
emphasizes the serious nature of the violations, the potential harm to clients,
and the fact that attorney should have known his actions were violating the
rules.  We disagree and conclude that the hearing panel was correct in
ordering private admonition.

¶ 13.         We
have adopted the American Bar Association (ABA) Standards for Imposing Lawyer
Discipline, In re Andres, 2004 VT 71, ¶ 14, 177 Vt. 511, 857 A.2d
803 (mem.), which sets forth four factors to consider when determining an
appropriate sanction in a disciplinary proceeding: (1) the duty violated; (2)
the lawyer’s mental state; (3) actual or potential injury caused by the
misconduct; and (4) aggravating or mitigating factors.  ABA
Ctr. for Prof’l Responsibility, Standards for
Imposing Lawyer Sanctions § 3.0 (1986) (amended 1992) [hereinafter ABA
Standards].

¶ 14.         Four
possible sanctions are appropriate for attorneys who mishandle client
funds.  Id. § 4.1.  Suspension
is the presumptive sanction “when a lawyer knows or should know that he is
dealing improperly with client property and causes injury or potential injury
to a client.”  Id. § 4.12. 
Reprimand is the presumptive sanction “when a lawyer is negligent in dealing
with client property and causes injury or potential injury to a client.”  Id. § 4.13.  The presumptive sanctions,
however, may be increased or reduced based on a weighing of aggravating and
mitigating factors.  Id. §§ 9.2-9.3. 
In the context of sanctions, “knowledge” is defined as “the conscious awareness
of the nature or attendant circumstances of the conduct but without the
conscious objective or purpose to accomplish a particular result.”  Id. at xxi.  “Negligence” is defined as “the
failure of a lawyer to heed a substantial risk that circumstances exist or that
a result will follow, which failure is a deviation from the standard of care
that a reasonable lawyer would exercise in the situation.”  Id.

¶ 15.         The
primary dispute here centers around the starting point
for discipline: suspension or public reprimand.  As noted above,
§ 4.12 requires knowledge on the part of the attorney, while § 4.13
requires only negligence, but the distinction is blurred because § 4.12
applies when an attorney either “knows or should know” his conduct violates the
rules.  The hearing panel applied § 4.13 based on the parties’
stipulation that attorney’s mental state merely was negligent.  Despite
this stipulation, Disciplinary Counsel argues that the language “should know”
as used in § 4.12 applies here because all attorneys should know the
rules, particularly those governing client trust accounts.

¶ 16.         Disciplinary
Counsel relies on our decision in In re Farrar, 2008 VT 31, 183 Vt. 592,
949 A.2d 438 (mem.), to support its argument.  The facts of Farrar
are strikingly similar to those of the present case: in responding to a random
survey, the attorney discovered he had been commingling funds in violation of
Rule 1.15, which he fully disclosed.  The hearing panel ordered private
admonition, but on review we concluded that public reprimand was the
appropriate sanction.  2008 VT 31, ¶¶ 1-2.  We agreed with the
panel that the presumptive sanction was suspension, given the seriousness of
the offense and the fact that the attorney “should have known that his handling
of his trust account” violated the rules.  Id.
¶ 11.  We disagreed, however, with the Panel’s decision to
reduce the sanction from suspension to private admonition based on mitigating
factors that included the attorney’s cooperation with the proceeding, remorse,
and lack of dishonest intent.  Id. ¶ 9-10,
12.  We emphasized that “[t]he prohibition against lawyers
commingling private monies with client funds is a fundamental precept” and
“mistake about the applicability of an ethical rule cannot excuse or even
mitigate misconduct when the lawyer has violated a rule fundamental to
governance of the legal profession.”  Id.
¶ 10 (quotation omitted).

¶ 17.         At
oral argument, Disciplinary Counsel discussed the difference between negligence
and knowledge in handling client property.  According to Disciplinary
Counsel, a negligent action can be characterized as bookkeeping or other
technical errors; the attorney understood the Rules but nonetheless made a
careless mistake.  An action where the attorney should have known
he was violating the rules, according to Disciplinary Counsel, would involve a
situation where the attorney either did not know the rules or did not
understand that his conduct violated the rules.

¶ 18.         This
echoes our analysis in In re Fink, 2011 VT 42, 189 Vt. 470, 22 A.3d 461,
where we discussed the line between negligent and knowing states of mind. 
Id. ¶ 38.  We stated that “the
distinguishing factor between negligent and knowing conduct is whether a lawyer
had a conscious awareness of the conduct underlying the violation or whether he
failed to heed a substantial risk that a violation would result from his
conduct.”  Id.  We acknowledged that a fine line exists
between negligent and knowing acts, yet the difference between public reprimand
and private admonition is great.  Id.  We concluded that
because this line is so difficult to discern and the distinction is highly
fact-based, we should accord great weight to the hearing panel’s determination
on the attorney’s state of mind.  Id.

¶ 19.         Here,
Disciplinary Counsel argues that, despite the parties’ stipulations, attorney’s
state of mind is a question of law.  Attorney’s state of mind is indeed a
question of fact, as we noted in Fink.  The parties stipulated that
attorney was fully cognizant of the rules but nonetheless believed his conduct
was appropriate.  But whether such a misunderstanding of the rules is knowing rather than negligent is a question of law. 
Thus, the question is whether suspension is the presumptive sanction when the
attorney should have known his conduct violated the rules.  As
stated above, supra, ¶ 11, we review these mixed questions of fact
and law for clear error.

¶ 20.         The
hearing panel concluded that, based on the language in the definition section
of the ABA Standards, which does not include the term “should know,” the
presumptive sanction for attorneys who do not have conscious knowledge is
public reprimand.  The panel stated that it “expect[s] that all lawyers should
know the rules, but [it does] not impose serious discipline such as
suspension for that fact alone,” and concluded that it does not “believe that
suspension is an appropriate starting point for discipline given that the
parties have agreed that we are dealing here with negligent behavior.”

¶ 21.         We
agree with the hearing panel, particularly given this fine line between mental
states and the seriousness of imposing suspension or public reprimand over
private admonition.  Although we treat violations of trust account rules
seriously, the ABA Standards provide no indication that client trust account
violations are subject to a different analysis.  And we decline to
conclude that any time an attorney should have known his conduct
violated the rules, because he is charged with comprehensive knowledge of the
content of those rules, that he presumptively will be suspended.  In Fink,
we differentiated between mental states in defending against violations and
mental states as applied to sanctions.  2011 VT 42,
¶ 41.  We stated that “knowing conduct does not encompass both
knew or should have known” because “[i]f the
definition extended to constructive knowledge then no misconduct would be
negligent.”  Id. (quotation omitted).  We explained that
“while a lawyer’s good faith, but unreasonable, belief that his actions are not
misconduct is not a defense to a violation, such an
error can be a factor in imposing discipline.”  Id.  We agree
that under the Fink analysis the presumptive sanction in this case is a
public reprimand.

¶ 22.         In
reaching this conclusion, we also note that the potential injury to the client
is less severe than in Farrar.  Although any mishandling of client
property is serious, we consider that attorney took pains not to
commingle funds by creating separate subaccounts for distinct purposes and
keeping careful, detailed records of each account to ensure no client funds
were confused with his personal funds.  In Farrar, on the other
hand, the attorney’s bookkeeper transferred money back and forth between the
business and client trust accounts, directly commingling the funds.  2008 VT 31, ¶ 3.  The potential that client funds
would be used for nonclient related purposes was far
greater there than here.  Based on attorney’s mental state, the lack of
actual injury, and the low potential for injury, we conclude that public
reprimand is the presumptive sanction.

¶ 23.         With
public reprimand the starting point, we consider whether the mitigating factors
reduce the appropriate sanction from public reprimand down to private
admonition.  As Disciplinary Counsel recognized, attorney took additional
affirmative steps in hiring a CPA at his own expense, ordering bank and court
records, and diligently tracking every irregularity going back to the opening
of his IOLTA account in 1997.  His personal investigation far exceeded
that of Disciplinary Counsel, resulting in details of violations and
irregularities that Disciplinary Counsel would not have uncovered.  He
disclosed far more information than was required, including several bookkeeping
errors and other irregularities that already had been remedied. 
Attorney’s extensive efforts go beyond what was required of him and weigh
heavily in our consideration of mitigating factors.

¶ 24.         We also
add to the scale several other mitigating factors stipulated to by the parties:
absence of a prior disciplinary record, lack of selfish or dishonest motive,
presence of personal problems, positive character and reputation, presence of
physical disability, and remorse.  The only aggravating factor is
attorney’s thirty years of experience.  The weight of the mitigating
factors over the aggravating factors is far greater than in Farrar, 2008
VT 31, ¶ 12, and merits a reduction in sanction.

¶ 25.         We
therefore conclude that public reprimand is the presumptive sanction and that
mitigating factors reduce the appropriate sanction to private admonition.

Affirmed.

 

¶
26.        
ROBINSON, J., concurring.  
While the commingling of an attorney’s personal funds with clients’ funds is
almost always impermissible under our ethical rules, see V.R.Pr.C.
1.15, the commingling at issue here was as benign as commingling can be. 
Although attorney placed personal funds in subaccounts within his client trust
account, those accounts were separately labeled as attorney’s personal funds,
the funds were deposited separately into these accounts, and attorney
maintained a separate ledger to ensure that he would not confuse client and
personal funds.  Attorney made an honest mistake in believing that keeping
separate personal “escrow” accounts within his account was permitted. 
Upon learning that his understanding was mistaken, attorney arranged for a
wide-ranging, extensive audit, and he self-reported more than Disciplinary
Counsel would have sought to uncover.  For all of these reasons, the end
point of the hearing panel’s, and now the majority’s, analysis is reasonable
and appropriate, and for reasons set forth below, I concur in the result.

¶
27.        
I write separately because I believe the path to that result chosen by
the hearing panel and endorsed by the majority confuses the applicable law and
sets a dangerous precedent for future cases involving improper handling of
client property.[1] 
In determining the presumptive sanction, before considering aggravating and
mitigating factors, the majority rightly focuses on the distinction between
§ 4.12 and § 4.13 of the American Bar Association (ABA) Standards for
Imposing Lawyer Discipline.  ABA Ctr. for Prof’l Responsibility, Standards for Imposing Lawyer
Sanctions (1986) (amended 1992) [hereinafter ABA Standards]. 
The former describes the presumptive sanction “when a lawyer knows or should
know that [he or she] is dealing improperly with client property and causes
injury or potential injury to a client.”  Id.
§ 4.12.  The latter describes the presumptive sanction “when a
lawyer is negligent in dealing with client property and causes injury or
potential injury to a client.”  Id. § 4.13. 
The majority asserts that the line between these standards is blurred because
the former section applies when an attorney either knows or “should know” that
his or her conduct violates the rules.  Ante,
¶ 15.  I believe these sections are clear and distinct, and
that the majority, not the ABA, has created confusion with respect to the
application of these standards.  The reasoning embraced by the majority
is, essentially, that if a lawyer knowingly takes actions that constitute
commingling of personal and client funds, but does not actually know that his
or her actions violate the rules, then the lesser presumptive sanction for
negligent conduct may apply.  I gather the theory is that “should know” is
a concept that sounds in negligence.

¶
28.        
The problems with this approach are manifold.  First, it completely
reads the phrase “or should know” out of § 4.12.  The majority’s
suggestion that the presumptive sanction of suspension only applies when a
lawyer actually knows that he or she is dealing improperly with client property
is at odds with the plain language of the standards.  The commentary to
the ABA Standards makes this point even clearer.  The annotation to
§ 4.12 states that suspension should
be reserved “for lawyers who engage in misconduct that does not amount to
knowing misappropriation or conversion” and that “[t]he most common
cases . . . involve lawyers who commingle client funds with
their own or fail to remit client funds promptly.”  By contrast, the
commentary to § 4.13 of the ABA Standards explains that “reprimand is
appropriate for lawyers who simply fail to follow their established procedures.
 Reprimand is also appropriate when a lawyer is negligent in training or
supervising his or her office staff concerning proper procedures in handling
client funds.”  This description applies squarely to the bookkeeping
errors and overdrawn subaccounts for which attorney in this case was
sanctioned, both of which resulted from a negligent failure to follow
established procedures.  But it does not describe the class of violations
involving an attorney knowingly following practices that, although attorney did
not realize it, amount to improper commingling under the rules.

¶
29.        
Second, this
approach departs significantly from our own case law.  In In re Farrar,
we considered a case in which a lawyer
had his bookkeeper regularly transfer $200 from the lawyer’s business account
to the trust account as a sort of savings plan for the lawyer.  2008 VT 31, ¶¶ 2-3, 183 Vt. 592, 949 A.2d 438 (mem.).  The bookkeeper reconciled the trust account on
a monthly basis; the lawyer’s money was never used to counteract a deficit in
the client trust account; the lawyers’ clients never suffered actual harm; and
the lawyer had no selfish or dishonest motive.  Id.  The
hearing panel recommended a private admonition and placed the lawyer on
probation with the condition that he write an article
for the Vermont Bar Journal about proper trust-account management. 
Id. ¶ 4.  This Court, reviewing the
hearing panel’s recommendation on its own motion, rejected the private
admonition as inappropriately lenient.  In determining the presumptive
sanction, this Court wrote:

[R]espondent’s practice of
putting his own money in his client trust account violated his duty to his
clients to preserve their property.  Respondent had full knowledge of his
bookkeeper’s regular practice of putting nonclient
funds into his client trust account, and respondent continued this practice for
many years. Respondent should have known that his handling of his trust account
was in violation of his professional responsibilities.  As explained,
respondent’s actions did not actually harm his clients, but there was the
potential for injury.  Under these circumstances, . . . the
presumptive sanction . . . is suspension. 

 

Id.
¶ 11.  Considering the
mitigating factors, this Court imposed the sanction of public reprimand, rather than suspension.  We specifically rejected the
lawyer’s argument that the lawyer should not be subject to more than a private
admonition because he made an honest mistake and did not cause any
injury.  We explained:

While recognizing that respondent did not act
selfishly, we will not minimize his infraction merely because he was unaware
that his acts violated the rules of professional conduct.  “If a failure
to understand the most central Rules of Professional Conduct could be an
acceptable defense for a charged violation, even in cases of good faith
mistake, the public’s confidence in the bar, and more importantly, the public’s
protection against lawyer overreaching would diminish considerably.”  The
prohibition against lawyers commingling private monies with client funds is a
fundamental precept.  “[M]istake about the
applicability of an ethical rule cannot excuse or even mitigate misconduct when
the lawyer has violated a rule fundamental to governance of the legal
profession.”

 

Id. ¶ 10 (citation omitted) (quoting In re Smith,
817 A.2d 196, 202 (D.C. 2003)).

 

¶
30.        
The majority tries to distinguish Farrar
by suggesting that the potential for injury to clients here was less severe
than in Farrar.  Ante, ¶ 22. 
But the majority ignores Farrar’s express holding that suspension
is the presumptive sanction under the ABA Standards for knowing conduct that
amounts to commingling, even if the lawyer did not realize that the bookkeeping
practice violated the ethical rule.  The majority also makes no attempt to
reconcile its holding with this Court’s recognition in Farrar that a “mistake
about the applicability of an ethical rule cannot excuse or even mitigate
misconduct.”  The majority’s holding in this case contradicts our decision
in Farrar on these points.

¶
31.        
Although Farrar squarely addresses
the presumptive sanction for commingling personal and client property under the
ABA Standards, the majority instead relies on the analysis in In re Fink,
which deals only obliquely with the issue before us in this case.  2011 VT 42, 189 Vt. 470, 22 A.3d 461.  In Fink,
we concluded that the evidence supported the hearing panel’s finding that the
lawyer knew he was supposed to put a contingent fee in writing and knew he had
not done so.  Id. ¶ 39.  As a
result, we agreed that this violation was knowing. 
Id.  But with respect to another violation, the charging of an
excessive fee, the lawyer was merely negligent because he had erroneously
thought that he would play a bigger role, and would contribute to a greater
degree to the client’s case.  Id. ¶ 40.

¶
32.        
The Court’s general discussion of the
different states of mind described in the ABA Standards does not support the
conclusion that a lawyer’s mistaken understanding of the ethical rules
concerning commingling of property lowers the presumptive sanction for improper
commingling to a public reprimand.  In fact, in its discussion, the Court
noted:

In the context of sanctions . . . knowing
conduct does not encompass both knew or should have known.  If the
definition extended to constructive knowledge then “no misconduct would be
negligent because rather than failing to heed a substantial risk we would
always assume the lawyer should have known the substantial risk.”

Id.
¶ 41 (quoting In re Stansfield, 187 P.3d 254, 263 (Wash.
2008)).  The problem is, as noted above, in the context of sanctions for
dealing improperly with client property, the category of violations subject to
a presumptive sanction of suspension specifically does include
violations where the lawyer knew or should have known that the offending
conduct violated the rules.

¶
33.        
I fear that the Court’s holding in this
case will have the unintended consequence of reducing the presumptive sanction
to public reprimand in the vast majority of cases involving improper dealings
with client property.  I have no doubt that the vast majority of lawyers
who maintain their trust accounts in a way that violates the rule against
commingling do not realize that their practice violate the rules.  But I
can imagine a wide range of practices that we would agree a lawyer should
know violate the rules.  If we read the “should know” prong out of the
description of the presumptive sanction in § 4.12, then we are essentially
setting up ignorance of the applicable ethical rules as a defense (or at least
a mitigating factor) in a disciplinary proceeding arising from a violation of
those rules.  This approach undermines the ability of the Board of
Professional Responsibility and this Court to ensure compliance with the rules,
and can only undermine public confidence in our effective regulation of the
bar.

¶
34.        
If what is driving the majority’s
decision is the parties’ stipulation that attorney’s “mental state with respect
to the violation of IOLTA requirements was one of
negligence,” then the majority should limit its decision to that
rationale.  If the majority interprets this stipulation as a concession
that § 4.13 (rather than § 4.12) applies,[2]
then it should acknowledge that based on the rest of the record the stipulation
does not appear to jibe with the relevant ABA Standards.  Rather than
describing the applicable law in a way that reads an important prong out of
§ 4.12, the majority should simply conclude that the parties essentially stipulated
to a presumptive sanction that is less severe than that ordinarily required by
the ABA Standards for commingling of the sort attorney committed here.

¶
35.        
Although I disagree with the majority
about the presumptive sanction in this case, I concur in the majority’s
judgment because even though suspension is the presumptive sanction in this
case, the abundance of mitigating factors warrants a rare two-level sanction
reduction to a private admonition.  In Farrar, we disapproved of
such a substantial reduction from the presumptive sanction of suspension on
facts similar to those before us in this case.  As I argued above, the
distinctions between this case and Farrar noted by the majority—such as
the substantially greater risk to client funds resulting from the lawyer’s
practices in Farrar relative to the risk in this case—have no bearing on
which presumptive sanction applies to bookkeeping practices that improperly
commingle personal and client funds.  However, the distinctions are
relevant to explain my departure from Farrar with respect to the extent
of mitigation from the presumptive sanction in this case.  See ABA
Standards § 9.32 (listing thirteen
“[f]actors which may be considered in mitigation”).  Most important, in
this case, there was very little actual risk to client funds.  Id.
§ 3.0(c) (“In imposing a sanction . . .
a court should consider . . . the potential or actual injury caused
by the lawyer’s misconduct . . . .”).  Moreover, upon
realizing that his handling of client funds had violated the rules, attorney’s
aggressive and proactive self-scrutiny and disclosure in this case were
exemplary.  Id. § 9.32 (noting that “timely
good faith effort to make restitution or to rectify consequences of misconduct”
is mitigating factor).  Our sanction structure ought to create an
incentive for members of the Bar to emulate his self-examination.  Given
these considerations, a two-level reduction—from the
presumptive sanction of suspension to private admonition—is warranted.

¶ 36.         For these reasons, although I do not join the
majority’s analysis, I concur in the result, and agree that private admonition
is the appropriate sanction in this case.

¶ 37.         I am authorized to state that Judge Durkin
joins in this concurrence.

 

                                                                  
BY THE COURT:

 

 

                                                                  
_______________________________________

                                                                  
Paul L. Reiber, Chief Justice

 

                                                                  
_______________________________________

                                                                  
John A. Dooley, Associate Justice

                                                                  


                                                                  
_______________________________________

                                                                  
Marilyn S. Skoglund, Associate Justice

 

                                                                  
_______________________________________

                                                                  
Beth Robinson, Associate Justice

                                                                  


                                                                  
_______________________________________

                                                                  
Thomas S. Durkin, Superior Judge,

                                                                  
Specially Assigned

 


















[1] 
I agree completely with the majority’s analysis with respect to the bookkeeping
errors and overdrawn subaccounts.  I depart from the majority’s analysis
only with respect to the commingling of client and personal funds.





[2] 
Although this sentence in isolation appears to represent such a concession, in
the context of the stipulation as a whole, it is unclear whether the
stipulation represents a concession that ABA Standard applicable to negligent
violations applies rather than simply an acknowledgment that attorney made an
honest mistake.